# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

GRANT NEAL

      Plaintiff,

vs.

COLORADO STATE UNIVERSITY-
PUEBLO *et al.*

      Defendants.

**CASE NO.: 1:16-CV-00873-RM-CBS**

**BRIEF OF *AMICI CURIAE* EQUAL RIGHTS ADVOCATES ET AL. IN SUPPORT OF DEFENDANTS UNITED STATES DEPARTMENT OF EDUCATION, UNITED STATES DEPARTMENT OF EDUCATION OFFICE FOR CIVIL RIGHTS, JOHN B. KING, JR., CATHERINE LHAMON, AND UNITED STATES OF AMERICA'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

STATEMENT REGARDING, SEPARATE BRIEFING, AUTHORSHIP AND MONETARY CONTRIBUTIONS ................................................................................................... vi

CORPORATE DISCLOSURE STATEMENT ......................................................... vi

STATEMENT OF INTEREST OF *AMICI*.............................................................. vii

STATEMENT OF THE ISSUE............................................................................... vii

SUMMARY OF ARGUMENT ............................................................................. viii

INTRODUCTION .................................................................................................... 1

ARGUMENT............................................................................................................ 2

   I.    Legal Standard for Motion to Dismiss.......................................................... 2

   II.    The Dear Colleague Letter is an Interpretive Rule Exempt From Notice and Comment under the Administrative Procedure Act.................................................................... 3

   A.    Congress Authorized OCR to Enforce 34 C.F.R. § 106.8(b)........................... 4

   B.    The DCL Interprets "Equitable" in 34 C.F.R. §106.8(b) ................................ 5

      1.    The Use of Mandatory Language in the DCL Does Not Render it Legislative Because it Mandates Nothing Not Already Required By 34 C.F.R. § 106.8(b) ................................... 7

      2.    OCR's Requirement of a Preponderance of the Evidence Standard in College Disciplinary Proceedings Interprets "Equitable" in 34 C.F.R. § 106.8(b)............................. 8

      a.    The Liberty Interest at Stake in College Disciplinary Proceedings is Not of the Gravity that Requires a Heightened Standard of Proof ......................................................... 9

      b.      A Heightened Standard of Proof Would Be Inequitable ............................................. 10

CONCLUSION ........................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Addington v. Tex.*, 441 U.S. 418, 425–33 (1979)...................................................................... 10

*American Mining Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106  (D.C. Cir. 1993)

.................................................................................................................................... passim

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ...................................................................... 3

*Ballesteros v. Ashcroft*, 452 F.3d 1153 (10th Cir. 2006) ................................................ 6

*Bazarewski v. Vail Corp.*, 23 F. Supp. 3d 1327 (D. Colo. 2014)..................................... 3

*Community Nutrition Institute v. Young*, 818 F.2d 943 (D.C. Cir. 1987)........................ 8

*Doe ex rel. Doe v. Coventry Bd. of Educ.*, 630 F. Supp. 2d 226 (D. Conn. 2009); ..................... 10

*Doe v. Derby Bd. of Educ.*, 451 F. Supp. 2d 438 (D. Conn. 2006 ................................ 10

*Fertilizer Inst. v. United States EPA*, 935 F.2d 1303 (D.C. Cir. 1991) ................................. 4, 8, 9

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) ........................................ 5

*Grove City College v. Bell*, 465 U.S. 555 (1984) ......................................................... 5

*Hemp Indus. Ass'n v. Drug Enf't Admin.*, 333 F.3d 1082 (9th Cir. 2003). .................................... 4

*In re Winship*, 397 U.S. 358 (1970) ............................................................................ 9

*Miller v. Cal. Speedway Corp.*, 536 F.3d 1020 (9th Cir. 2008)............................................ 4, 6, 8

*Mission Group Kansas v. Riley*, 146 F.3d 775 (10th Cir. 1998)................................... 11

*N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512 (1982)...................................................... 5

*Nat'l Wresting Coaches Ass'n v. United States Dep't of Educ.*, 263 F. Supp. 2d 82 (D.C. Dist. Ct.

2003)...................................................................................................................... 5

*Osteen v. Henley*, 13 F.3d 221 (7th Cir. 1993) ............................................................. 9

*Santosky v. Kramer*, 455 U.S. 745 (1982) ................................................................. 9, 10, 11

*Schneiderman v. U. S.*, 320 U.S. 118 (1943) ............................................................................. 10

*Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008 (9th Cir. 2009) ......... 10

*U. S. v. Schell*, 692 F.2d 672 (10th Cir.1982). ......................................................................... 10

*Woodby v. Immigr. & Naturalization Serv.*, 385 U.S. 276 (1966) ............................................... 10

**Statutes**

34 C.F.R. §106.8(b ....................................................................................................... *passim*

5 U.S.C. § 553(b)(3)(A) ....................................................................................... 3, 6, 7, 15

**Other Authorities**

Heather M. Karjane et al., Campus Sexual Assault: How America's Institutions of Higher

Education Respond at 120 (2002), *available at*

https://www.ncjrs.gov/pdffiles1/nij/grants/196676.pdf .................................................................8

Bonnie S. Fisher et al., *The Sexual Victimization of College Women* at 10, U.S. Department of

Justice (2000), *available at* https://www.ncjrs.gov/pdffiles1/nij/182369.pdf ............................ 5

Kristen Jones, *Barriers curb reporting on campus sexual assault,* Center of Public Integrity

(Dec. 2, 2009, updated March 26, 2016), *available at*

https://www.publicintegrity.org/2009/12/02/9046/barriers-curb-reporting-campus-sexual-

assault ................................................................................................................................. 5

Christopher P. Krebs et al., *The Campus Sexual Assault Study: Final Report* (Nat'l Crim. Just.

Reference Serv., Oct. 2007). ............................................................................................... 5

Kristen Lombardi, *A Lack of Consequences for Sexual Assault,* Center for Public Integrity (Feb.

24, 2010, updated July 14, 2014), *available at*

https://www.publicintegrity.org/2010/02/24/4360/lack-consequences-sexual-assault ............... 5

*Merriam-Webster.com*, "equitable," Merriam-Webster, 2016 (July 13, 2016). ........................... 10

U.S. Department of Education, Revised Sexual Harassment Guidance: Harassment of Students
by School Employees, Other Students, or Third Parties at 20 (Jan. 2001), available at
www.ed.gov/ocr/docs/shguide.pdf. ................................................................................. 10, 14

U.S. Department of Education, Sexual Harassment Guidance: Harassment of Students by School
Employees, Other Students, or Third Parties, 62 Fed. Reg. 12,034 (Mar. 13, 1997) ............... 10

U.S. Dep't of Health, Educ., and Welfare, Title IX Grievance Procedures: An Introductory
Manual (1976). ........................................................................................................... 10

## STATEMENT REGARDING, SEPARATE BRIEFING, AUTHORSHIP AND
## MONETARY CONTRIBUTIONS

*Amici Curiae* certify that no party or party's counsel authored this brief in whole or in part, that no party or party's counsel provided any money that was intended to fund the preparation or submission of this brief, and no party or person contributed money that was intended to fund the preparation or submission of this brief.

This separate amicus brief is necessary. No other brief of which we are aware addresses whether Plaintiff has pled facts sufficient to establish that the April 4, 2011 Dear Colleague Letter was issued in violation of the Administrative Procedure Act.

*Amici Curiae* support the arguments set forth in the motion to dismiss filed by Defendants United States Department of Education, United States Department of Education Office for Civil Rights, John B. King, Jr., Catherine Lhamon, and the United States of America ("Federal Defendants"). This amicus brief sets forth additional or alternative reasons why the Federal Defendants' Motion to Dismiss should be granted.

## CORPORATE DISCLOSURE STATEMENT

*Amici Curiae* certify that they have no parent corporations, and no publicly held company owns 10% or more of their stock.

## STATEMENT OF INTEREST OF *AMICI*

*Amici* are organizations and individuals from throughout the United States who are dedicated to improving the lives of women and girls and to ending sexual harassment and sexual violence in our nation's schools. *Amici* advocate on behalf of sexual assault survivors and have special expertise regarding both the impact of campus sexual assault on student victims and the range of institutional responses to reports of sexual assault in colleges across the country. *Amici* view campus sexual assault as a very significant barrier to achieving the goal of Title IX of the Education Amendments of 1972 ("Title IX"), ending discrimination against women and girls in federally funded educational programs. *Amici* have an interest in ensuring that the Department of Education's Office for Civil Rights ("OCR") enforces Title IX and its implementing regulations in postsecondary educational institutions who receive federal funds. OCR's interpretive guidance documents, including the April 4, 2011 Dear Colleague Letter challenged in this litigation, are critical instruments for effective administrative enforcement of Title IX. *Amici* supply this brief to aid the Court in evaluating Plaintiff Grant Neal's claim that the April 4, 2011 Dear Colleague Letter was issued in violation of the Administrative Procedure Act. Individual statements of interest of *amici curiae* are attached as Exhibit 1 to this brief.

## STATEMENT OF THE ISSUE

Does Plaintiff's Amended Complaint state facts sufficient to establish that the Department of Education's Office for Civil Rights was issued in violation of the Administrative Procedure Act?

## SUMMARY OF ARGUMENT

*Amici* concur with the Department of Education's Office for Civil Rights ("OCR"), John B. King, Jr., Catherine Lhamon, and the United States of America (collectively, "Federal Defendants") that Plaintiff lacks standing to challenge the validity of the Office for Civil Rights' April 24, 2011 Dear Colleague Letter ("DCL"). Even if Plaintiff has standing, the allegations in the Amended Complaint ("FAC") are insufficient to establish a violation of the Administrative Procedure Act ("APA"). The DCL is an interpretive rule not subject to notice and comment rulemaking, and Plaintiff's APA claims against the Federal Defendants should therefore be dismissed with prejudice.

The DCL interprets Title IX's regulatory requirement that funding recipients "adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints" of sexual violence. 34 C.F.R. § 106.8(b). Plaintiff alleges that because the DCL identifies what OCR considers necessary elements of an "equitable" grievance procedure, it is a legislative rule, and thus void because it was issued without notice and comment. ECF No. 8 ¶¶264, 277–80. Plaintiff's argument fundamentally misapprehends the difference between a legislative rule and an interpretive rule. He contends that because the DCL uses "mandatory language," it creates new legal obligations and is therefore legislative. ECF No. 8 ¶¶278–80. However, the use of mandatory language by an agency interpreting a regulatory imperative does not render a rule legislative unless the substance of the rule's mandate exceeds the scope of a preexisting legal duty. *American Mining Congress v. Mine Safety & Health Admin.,* 995 F.2d 1106, 1111 (D.C. Cir. 1993). Because all colleges subject to Title IX were already required to have "equitable" grievance procedures, the DCL's clarification of the

elements that an equitable grievance procedure must include does not exceed the scope of their preexisting legal duty. *Id.*; 34 C.F.R. § 106.8(b).

Plaintiff also contends that the DCL violated the APA because, in his view, students accused of sexual violence should be entitled to a "clear and convincing" or "beyond a reasonable doubt" standard of proof in college disciplinary proceedings. ECF No. 8 ¶¶280–87. This argument lacks merit for at least two reasons. First, it confuses the procedural validity of the DCL with its substantive validity. *American Mining Congress*, 995 F.2d at 1112; *Fertilizer Institute v. United States Environmental Protection Agency*, 935 F.2d 1303, 1308 (D.C. Cir. 1991). To determine whether the DCL should have gone through notice and comment rulemaking, the Court need only determine whether it interprets a preexisting legal duty (e.g., the meaning of "equitable" in 34 C.F.R. § 106.8(b).) Whether the DCL's interpretation of that term is reasonable and entitled to deference is not at issue. *Fertilizer Institute*, 935 F.2d at 1308–09. Second, imposition of the heightened standard of proof Plaintiff suggests would be inequitable and thus contrary to the regulation interpreted by the DCL. 34 C.F.R. § 106.8(b). [1]

---

[1] As used herein, "respondent" refers to a student who is alleged to have committed an act of sexual violence, and "complainant" refers to a student who alleges she or he has been subjected to sexual violence in a college disciplinary proceeding.

## INTRODUCTION

In addition to challenging his suspension from Colorado State University Pueblo (CSU-Pueblo) for sexual assault, Plaintiff Grant Neal's lawsuit seeks to eviscerate the procedural protections for students set forth in the DCL, arguing that the DCL was issued in violation of the APA's rulemaking requirements and is therefore void. *Amici* agree with the Federal Defendants that Neal lacks standing to bring this challenge. However, even if Plaintiff has standing, his APA claim should fail.

The DCL explains colleges' obligations under Title IX with respect to addressing sexual violence on campus, a problem of epidemic proportions. At least one in five young women will be subjected to an attempted or completed rape during her college education.[2] On large campuses, this translates to hundreds of attempted or completed rapes every year.[3] Historically, colleges have failed to hold the perpetrators of these crimes accountable, which in turn deters victims from reporting their assaults or seeking the support they need to continue their education.[4]

Title IX's implementing regulations require colleges to establish "prompt and equitable" grievance procedures for the resolution of students' sexual violence complaints. 34 C.F.R. § 106.8(b). OCR issued guidance to schools further explaining this requirement twice prior to the

---

[2] Christopher P. Krebs et al., *The Campus Sexual Assault Study: Final Report* (Nat'l Crim. Just. Reference Serv., Oct. 2007).

[3] Bonnie S. Fisher et al., *The Sexual Victimization of College Women* at 10, U.S. Department of Justice (2000), *available at* https://www.ncjrs.gov/pdffiles1/nij/182369.pdf.

[4] *See generally* Kristen Lombardi, *A Lack of Consequences for Sexual Assault,* Center for Public Integrity (Feb. 24, 2010, updated July 14, 2014), *available at* https://www.publicintegrity.org/2010/02/24/4360/lack-consequences-sexual-assault. The Center for Public Integrity conducted a nine-month investigation which included interviews with 48 experts familiar, review of records in individual cases and OCR complaints, and interviews with 33 women who reported being sexually assaulted by other students. *Id.* The results were released in a series of articles in 2009.

DCL, in 1997 and 2001. Yet college disciplinary proceedings continued to function ineffectively, rarely leading to serious consequences for perpetrators of campus sexual assault.[5] Sexual assault survivors reported experiencing disciplinary proceedings as unfair and re-victimizing. *Id.*

On April 4, 2011, OCR issued the DCL to help colleges understand what is required for disciplinary proceedings to be deemed "equitable" under the agency's construction of Title IX and 34 C.F.R. §106.8(b). *Id.* ¶278. Neal contends the DCL was required to undergo notice and comment rulemaking under the APA, and is therefore void. However, the DCL does not impose any new obligations on colleges; it merely advises funding recipients of OCR's construction of their preexisting legal duties under federal law and regulation. As an "interpretative rule" explaining a preexisting legal duty, the DCL requires no formal rulemaking. 5 U.S.C. § 553(b)(3)(A). Neal's allegations therefore do not make out a violation of the APA, and his APA claim should be dismissed with prejudice.

## **ARGUMENT**

### I.    **Legal Standard for Motion to Dismiss**

To survive a motion to dismiss, a plaintiff must allege facts that, if true, would state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[m]ere conclusory statements or legal conclusions masquerading as factual contentions" are not entitled to an assumption of truth. *Bazarewski v. Vail Corp.*, 23 F. Supp. 3d 1327, 1328 (D. Colo. 2014). The court should not consider Plaintiff's conclusory allegations regarding the

---

[5] *See generally* Kristen Jones, *Barriers curb reporting on campus sexual assault,* Center of Public Integrity (Dec. 2, 2009, updated March 26, 2016), *available at* https://www.publicintegrity.org/2009/12/02/9046/barriers-curb-reporting-campus-sexual-assault

overall effect of the DCL on college disciplinary proceedings across the country, or his allegations that the DCL causes colleges to violate the civil liberties of students alleged to have committed sexual violence. ECF No. 8 ¶¶201–204, 212. The court should also disregard Plaintiff's wholly unsupported allegation that "school disciplinary proceedings concerning allegations of sexual misconduct may result in consequences as severe as those arising from criminal charges." *Id.* ¶282. The only consequences of a disciplinary proceeding alleged in the FAC are Plaintiff's suspension from CSU-Pueblo, the requirement that he undergo a six-week educational or counseling course, and a "No Contact Order." *Id.* ¶153.

II.     **The Dear Colleague Letter is an Interpretive Rule Exempt From Notice and Comment under the Administrative Procedure Act**

Plaintiff contends that the DCL is a legislative rule, and that OCR's failure to utilize the notice and comment rulemaking procedure when it issued the DCL violated the APA and renders the DCL void. FAC ¶¶408–414. The APA generally requires agencies to undertake notice and comment procedures when promulgating rules of general applicability, which courts have termed "legislative rules." 5 U.S.C. § 553(b). However, the APA specifically exempts "interpretative rules" from this requirement. 5 U.S.C. § 553(b)(3)(A); *e.g., American Mining Congress*, 995 F.2d at 1110. Because the DCL is an interpretive rule,[6] Plaintiff's APA claim fails as a matter of law.

A rule is legislative and not interpretive if it has "legal effect." *E.g., American Mining Congress*, 995 F.2d at 1112. To determine whether a rule has legal effect, courts first examine whether the agency intended to invoke its delegated legislative power to create binding new obligations. *Id.* at 1111–12. OCR specifically disclaims any such intent in the DCL, stating:

---

[6]"Interpretive" is used herein synonymously with "interpretative."

3

"This letter does not add requirements to applicable law, but provides information and examples to inform recipients about how OCR evaluates whether covered entities are complying with their legal obligations." ECF No. 37-1 at 1, fn. 1. However, a rule that creates binding new obligations is legislative, even if characterized by the promulgating agency as interpretive. *Hemp Indus. Ass'n v. Drug Enf't Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003).

Whether a rule creates such obligations depends on whether its requirements were already enforceable by virtue of a statute, regulation, or previous legislative rule. *E.g.*, *American Mining Congress*, 995 F.2d at 1112. An agency's interpretation of an ambiguous term in a regulation it is authorized to enforce merely clarifies a preexisting legal duty. *Id.*; *Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1033 (9th Cir. 2008). This is precisely what the OCR did in issuing the DCL: it interpreted schools' preexisting duty under 34 C.F.R. § 106.8(b) to adopt "prompt and equitable" grievance procedures for complaints of sexual assault and other forms of sex discrimination. Plaintiff's APA claim should be dismissed because his allegations, even if true, are insufficient to establish that the DCL's requirements create any binding new obligations. *See Hemp Indus. Ass'n*, 333 F.3d at 1088.

A. <u>Congress Authorized OCR to Enforce 34 C.F.R. § 106.8(b)</u>

There is no question that OCR has the authority to enforce 34 C.F.R. § 106.8(b), which requires federal funding recipients to "adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints" of sex discrimination. *See Nat'l Wresting Coaches Ass'n v. United States Dep't of Educ.*, 263 F. Supp. 2d 82, 88 (D.C. Dist. Ct. 2003); *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 536–39 (upholding validity of 34 C.F.R. Part 106 regulations). Congress authorized the Department to enforce its "rules, regulations, or orders of general applicability" implementing Title IX where it finds a recipient in violation, and

4

to obtain compliance "by any other means authorized by law[.]" 20 U.S.C. § 1682. OCR may take action to correct a regulatory violation, even if the violation would not give rise to damages liability in a private lawsuit. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998) ("[a]gencies generally have authority to promulgate and enforce requirements that effectuate the statute's non-discrimination mandate, 20 U.S.C. § 1682, even if those requirements do not purport to represent a definition of discrimination under the statute."); *accord, Grove City College v. Bell*, 465 U.S. 555, 575 (1984) (upholding Department of Education's power to terminate federal funding for noncompliance with Title IX's regulations). Because the DCL interprets 34 C.F.R. § 106.8(b), a legislative basis for OCR's enforcement of existing rules and regulations implementing Title IX existed prior to the issuance of the DCL. *See American Mining Congress*, 995 F.2d at 1112.

## B. The DCL Interprets "Equitable" in 34 C.F.R. §106.8(b)

A rule is interpretive if it is "'derivable from the statute that it implements by a process fairly to be described as interpretive; that is, there must be a path that runs from the statute to the rule, rather than merely consistency between the statute and rule.'" *Ballesteros v. Ashcroft*, 452 F.3d 1153, 1158 (10th Cir. 2006) (quoting *Mission Group Kansas, Inc. v. Riley*, 146 F.3d 775, 783 n.8 (10th Cir.1998)).[7] Interpretive rules explain an agency's construction of an ambiguous term, providing "crisper and more detailed lines than the authority being interpreted." *E.g., American Mining Congress*, 995 F.2d at 1112; *Miller*, 536 F.3d at 1033.

---

[7] Although *Ballesteros* involved interpretation of a statute rather than a regulation, the same analysis applies to any legislative rule. *See Mission Group Kansas v. Riley*, 146 F.3d 775, 782 (10th Cir. 1998)

The "path that runs from the statute to the rule" is clearly discernible here. *Ballesteros*, 452 F.3d at 1158. Title IX's implementing regulations require schools to adopt "equitable" grievance procedures, but do not define the term "equitable." 34 C.F.R. Part 106. The plain meaning of the term, "dealing fairly and equally with all concerned," provides no further clarity. *Merriam-Webster.com*, "equitable," Merriam-Webster, 2016 (July 13, 2016).

As part of its efforts to secure Title IX compliance, the Department has delineated the necessary elements of an "equitable" grievance procedure over time. In 1976, the Department released "Title IX Grievance Procedures: An Introductory Manual," which made recommendations with respect to certain elements of grievance procedures, including the requirements for notification of the involved parties, the procedure for presentation of evidence, the right to impartial decision-makers, and the right to appeal. U.S. Dep't of Health, Educ., and Welfare, Title IX Grievance Procedures: An Introductory Manual at 10–11 (1976).[8] In 1997, after notice and comment, the Department issued guidance which explained what it deemed necessary elements for a grievance procedure to be "equitable": (1) notice of the grievance procedures, (2) "adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence," (3) "designated and reasonably prompt timeframes for the major stages of the complaint process," and (4) "notice to the parties of the outcome of the complaint." Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 62 Fed. Reg. 12,034, 12,044 (Mar. 13, 1997) ("1997 Guidance"). These requirements were reiterated in OCR's Revised Sexual Harassment Guidance, issued after notice and comment in 2001 ("2001 Guidance"). Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third

---

[8] A second edition was published in 1987.

Parties at 20 (Jan. 2001), available at www.ed.gov/ocr/docs/shguide.pdf. The requirements Plaintiff mischaracterizes as "newly created" by the 2011 DCL merely provide further explanation of the long-existing requirements for equitable grievance procedures.

1. **The Use of Mandatory Language in the DCL Does Not Render it Legislative Because it Mandates Nothing Not Already Required By 34 C.F.R. § 106.8(b)**

Plaintiff misunderstands the role of mandatory language in the analysis of whether a rule is legislative or interpretive. It is not the language that is dispositive, but the content of the mandate. *Mission Group Kansas v. Riley*, 146 F.3d 775, 782 (10th Cir. 1998) ("the dispositive question is whether the [challenged requirement] is a new rule, in which case the agency may not give it binding effect in the absence of compliance with the APA notice and comment procedures, or an interpretation of an existing rule, in which case it is binding precisely because it has, in effect, already been subject to the necessary procedural protections.") As the D.C. Circuit explained in *American Mining Congress v. Mine Safety & Health Administration*, "an interpretation will use imperative language—or at least have an imperative meaning—if the interpreted term is part of a command; it will use permissive language—or at least have a permissive meaning—if the interpreted term is in a permissive provision." 995 F.2d at 1111. In that case, the Mine Safety and Health Administration issued a Program Policy Letter which stated that certain X-ray results evidencing disease were "diagnoses" subject to a regulatory reporting requirement. Because the Program Policy Letter interpreted the term "diagnosis," it

was exempt from notice and comment rulemaking even though it was phrased as a mandate.[9] *Id.* at 1107; *see also Fertilizer Inst. v. United States EPA*, 935 F.2d 1303, 1307 (D.C. Cir. 1991) (EPA rule interpreting statutory mandate to report "release" of radionuclides to require report whenever a hazardous substance is placed into an unenclosed containment structure was not legislative because it interpreted the term "release"). Similarly, the DCL is interpretive and not legislative because it interprets "equitable" in 34 C.F.R. § 106.8(b).

## 2. OCR's Requirement of a Preponderance of the Evidence Standard in College Disciplinary Proceedings Interprets "Equitable" in 34 C.F.R. § 106.8(b)

The question before this Court with respect to Plaintiff's APA claim is not what standard of proof should apply in the abstract to colleges' grievance procedures concerning sexual assault, but whether the regulatory mandate to adopt "equitable" grievance procedures is susceptible to an interpretation requiring use of the preponderance of the evidence standard.[10] Plaintiff's argument that a heightened standard of proof should be used in college disciplinary proceedings

---

[9] The court distinguished *Community Nutrition Institute v. Young*, 818 F.2d 943, 934–46 (D.C. Cir. 1987), cited by Plaintiff, on the basis that it involved a policy statement rather than an interpretive rule. *American Mining Congress*, 995 F.2d at 1112.

[10] Whether, as Plaintiff alleges, the DCL has caused some colleges to cease use of the heightened "clear and convincing" standard of proof in disciplinary proceedings relating to sexual violence is beside the point. A rule which explains a regulatory term is interpretive even if its interpretation causes a regulated entity to change its practice. *Miller*, 536 F.3d at 1033; *Fertilizer Inst.*, 935 F.2d at 1308 ("regardless of the consequences of a rulemaking, a rule will be considered interpretive if it represents an agency's explanation of a statutory provision."). However, OCR has required a preponderance of the evidence standard since at least 1995, *see* ECF. No. 31 at 7, fn. 5, Exs. 3.C, 3.A, and at least 80% of colleges used the preponderance of the evidence standard or a lower standard prior to the issuance of the DCL in 2011. Heather M. Karjane et al., Campus Sexual Assault: How America's Institutions of Higher Education Respond at 120 (2002), *available at* https://www.ncjrs.gov/pdffiles1/nij/grants/196676.pdf.

where sexual violence is alleged confuses the question of the DCL's procedural validity with its substantive validity. *American Mining Congress*, 995 F.2d at 1112; *Fertilizer Inst.*, 935 F.2d at 1308.. Nevertheless, OCR's construction of "equitable" to require a preponderance of the evidence standard of proof is correct for two reasons. First, the liberty interests at stake in college disciplinary proceedings are not of the gravity that requires a heightened standard of proof. Second, a heightened standard of proof would be inequitable because it would give an unfair advantage to respondent students, in violation of 34 C.F.R. § 106.8(b).

### a. The Liberty Interest at Stake in College Disciplinary Proceedings is Not of the Gravity that Requires a Heightened Standard of Proof

Plaintiff argues that a heightened standard of proof is required because "school disciplinary proceedings concerning allegations of sexual misconduct may result in consequences as severe as those arising from criminal charges." ECF. No. 8 ¶282. But criminal defendants receive heightened procedural protections because of the liberty interest at stake in criminal cases, where incarceration and even death are potential outcomes. *Santosky v. Kramer*, 455 U.S. 745, 755 (1982); *In re Winship*, 397 U.S. 358, 361–64 (1970). Plaintiff fails to allege that any such severe penalties may be imposed by colleges. At most, Plaintiff himself faced expulsion from CSU-Pueblo, retaining the ability to complete his education elsewhere. ECF No. 8 ¶153. This sanction "is not so grave as to entitle him to the procedural protections thought necessary...where large interests of liberty or property may be at stake." *Osteen v. Henley*, 13 F.3d 221, 226 (7th Cir. 1993).

A heightened standard of proof is required only where much greater liberty interests are at stake. For example, "clear and convincing" or "clear, unequivocal, and convincing" standards of proof are required in denaturalization proceedings, deportation proceedings, civil commitment proceedings, and proceedings to terminate parental rights. *See Santosky*, 455 U.S. at 769 (termination of parental rights); *Addington v. Tex.*, 441 U.S. 418, 425–33 (1979) (civil commitment); *Woodby v. Immigr. & Naturalization Serv.*, 385 U.S. 276, 285–86 (1966) (deportation); *Schneiderman v. U. S.*, 320 U.S. 118, 124–25 (1943) (denaturalization). College disciplinary sanctions cannot be equated with loss of citizenship, expulsion from the United States, indefinite commitment to a mental institution, or the deprivation of one's liberty to raise his or her child.

## b. A Heightened Standard of Proof Would Be Inequitable

In fact, it would be inequitable to require a heightened standard of proof in college disciplinary proceedings where a student is alleged to have committed sexual assault or other gender-based violence against a fellow student. Both students in such proceedings have an interest in continuing to attend the college of their choice. Although disciplinary sanctions formally interfere with that interest, the hostile educational environment created by a sexual assault likewise interferes with an assault survivor's ability to learn. *See Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1026–28 (9th Cir. 2009); *Doe ex rel. Doe v. Coventry Bd. of Educ.*, 630 F. Supp. 2d 226, 233 (D. Conn. 2009); *Doe v. Derby Bd. of Educ.*, 451 F. Supp. 2d 438, 444 (D. Conn. 2006). Where the interests at stake are roughly equal, preponderance of the evidence is the appropriate standard. *U. S. v. Schell*, 692 F.2d 672, 678 (10th Cir.1982). To impose a higher burden of proof would privilege a respondent student's

interests over those of a complainant and would violate the requirement to make grievance procedures "equitable" under 34 C.F.R. § 106.8(b).

Although additional procedural protections may be necessary where the State's investigative and prosecutorial resources "dwarf" those of the individual, *Santosky*, 455 U.S. at 763, there is no such inequity between the parties in college disciplinary proceedings. Pursuant to OCR's 2001 Guidance, schools must undertake an "adequate, reliable, and *impartial*" investigation of sexual violence complaints. Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties at 20. The DCL explains that to meet this requirement, in addition to utilizing a preponderance of the evidence standard, schools must: (1) provide an equal opportunity for the parties to present relevant witnesses and other evidence at throughout the investigation and at any hearing, (2) provide similar and timely access to any information that will be used at the hearing, (3) to permit both parties legal representation if either party is allowed an attorney, (4) to equally impose any restrictions on the ability of lawyers to participate in the proceedings on both parties, and (5) where an appeals process exists, to make it equally available to both parties. ECF. No. 37-1 at 11–12. In the context of these procedural requirements, which place the parties on equal footing, it would be unfair to place a higher burden on complainant students than on respondents. For all of these reasons, the Court should find that the DCL's requirement that colleges use a preponderance of the evidence standard is an interpretation of the term "equitable" in 34 C.F.R. § 106.8, and therefore the DCL constitutes an interpretive rule exempt from notice and comment rulemaking requirements under 5 U.S.C. § 553(b)(3)(A).

## CONCLUSION

For the foregoing reasons, the Federal Defendants' Motion to Dismiss should be granted.

Dated: July 19, 2016.                    Respectfully submitted,

                                  By:    */s/ Rebecca Peterson-Fisher*
                                         Rebecca Peterson-Fisher, Esq.
                                         **Equal Rights Advocates**
                                         1170 Market Street, Suite 700
                                         San Francisco, CA 94102
                                         Telephone: (415) 575-2386
                                         Facsimile: (415) 621-6744
                                         Email: rpetersonfisher@equalrights.org.

CERTIFICATE OF SERVICE

I certify that on July 19, 2016, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for all parties, including the following:

Michael J. Mirabella, Esq.
450 E. 17th Avenue, Suite 400
Denver, CO 80203
mmirabella@mbellalaw.com

Andrew T. Miltenberg, Esq.
Tara J. Davis, Esq.
Jeffrey Berkowitz, Esq.
363 7th Avenue, Fifth Floor
New York, NY 10001
amiltenberg@mmllplaw.com
tdavis@mmplaw.com
jberkowitz@mmlplaw.com

Matthew J. Berns
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Matthew.j.berns@usdoj.gov

Amy Colony
Allison Ailer
Lauren Becker
Jacquelynn Rich Fredericks
Office of the Colorado Attorney General
1300 Broadway, 10th Floor, Denver, CO 80203
Amy.colony@coag.gov
Alison.ailer@coag.gov
Lauren.becker@coag.gov
Jacquelynn.richfredericks@coag.gov

                              /s/ Rebecca Peterson-Fisher
                        Rebecca Peterson-Fisher, Esq.
                        **Equal Rights Advocates**
                        1170 Market Street, Suite 700
                        San Francisco, CA 94102
                        Telephone: (415) 575-2386
                        Facsimile: (415) 621-6744
                        Email: rpetersonfisher@equalrights.org

1