IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-00873-RM-CBS

GRANT NEAL,

Plaintiff,

v.

COLORADO STATE UNIVERSITY-PUEBLO, *et al.*,

Defendants.

**CSU-PUEBLO DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [ECF NO. 27] PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

Defendants Colorado State University-Pueblo, the Board of Governors of the Colorado University System, Roosevelt Wilson, Jennifer DeLuna, Lesley DiMare, Kaitlyn Blakey, and Marie Humphrey (collectively "CSU-Pueblo Defendants"), through the Colorado Attorney General, submit this Reply in support of their Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 27], pursuant to Fed. R. Civ. P.12(b)(1) and 12 (b)(6).

**INTRODUCTION**

Plaintiff Grant Neal's response to the CSU-Pueblo Defendants' Motion to Dismiss emphasizes that the 12(b)(6) standard requires this Court to view the allegations in a light most favorable to the Plaintiff – and that these allegations, taken in their totality, support an inference of discrimination. In reality, Plaintiff is asking this Court to do far more than to view the allegations in a light most favorable to him. Rather, Plaintiff seeks to have this Court re-litigate the underlying disciplinary action based on an acceptance of the facts as he believes them to be or, at the very least, to focus on the evidence he contends supports a different outcome to the

underlying disciplinary action.[1] [ECF No. 55, pp. 2-6]. However, under a 12(b)(6) standard, this Court is not tasked with evaluating Plaintiff's version of events against those of the other witnesses or other information considered by University decision-makers. Instead, this Court - even while treating the allegations as true - may still conclude that the proceedings were neither gender biased nor procedurally flawed because Plaintiff's claims of discriminatory intent are supported by allegations that could also be explained as lawful conduct. Therefore, Plaintiff's claims of an "erroneous outcome" motivated by gender bias must fail under the *Iqbal/Twombly* framework.

In support of his claims, Plaintiff relies heavily on a recent Second Circuit opinion, *Doe v. Columbia University,* No. 15-1536, 2016 WL 4056034 (2d Cir. July 29,016), which represents a troubling departure from the pleading standards articulated by the United State Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).[2] This opinion is neither binding on this Court nor does it represent good policy with respect to the handling of student conduct issues by university officials and satisfying their obligations under Title IX.

Plaintiff responds to Defendants' arguments directed to his Fourteenth Amendment claims by re-asserting the allegations of the Amended Complaint without linking the claimed procedural shortcomings to any clearly established legal authority that deems them

---

[1] Plaintiff has asked this Court to conduct a do-over of the underlying disciplinary action in light of the allegations that (1) a party other than the alleged victim initially reported the incident; (2) the victim insisted that the encounter was consensual; and (3) the investigation was "prosecutorial minded" and "absurdly biased." Only the first two allegations state specific facts – the third is conclusory and not supported by a single, independent fact evincing a plausible allegation of discriminatory motive. [ECF No. 55, pp. 18-19].

[2] The controversial opinion in the Second Circuit case is being vigorously challenged by Columbia University. On August 26, 2016, Defendant Columbia University filed a Petition for Panel Rehearing or Rehearing *En Banc,* which remains pending. *Doe v. Columbia University,* No. 15-1536, (2d Cir. August 26, 2016) [Doc. 1850732].

*constitutionally* deficient. Plaintiff admits he received notice and an opportunity to be heard; he simply disagrees with the outcome. Therefore, the claims fall far short of stating a violation of his clearly established rights.

## ARGUMENT

**I.  Plaintiff cannot satisfy the *Iqbal/Twombly* plausibility standard to demonstrate an inference of discriminatory motive.**

Under *Iqbal,* it is insufficient to plead facts merely consistent with both lawful and unlawful motives. *Twombly,* 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed). Moreover, even where allegations may be "consistent" with discriminatory intent but the "more likely explanation[]" – the <u>plausible</u> explanation for the challenged conduct – is a legitimate response resulting in an analogous effect, the purportedly discriminatory purpose is not established. *See Iqbal*, 556 U.S. 681. The scenario Plaintiff asks this Court to accept is precisely what the *Iqbal* court counseled against. The *Iqbal* plaintiffs alleged that after the September 11 attacks, the defendants designated Arab Muslim detainees to be of "high interest" on the basis of discriminatory factors such as religion, race and national origin. While the Supreme Court recognized that the plaintiffs' allegations were "consistent" with discriminatory intent, "given more likely explanations, they do not plausibly establish this purpose." *Iqbal,* 556 U.S. at 681. The Court recognized the "obvious alternative explanation" of the policy's disproportionate impact on Arab Muslim men, that is, the fact that the September 11 attacks were perpetrated by Arab Muslims, and so a legitimate law enforcement response would cause this outcome. *Id.,* 556 U.S. at 682.

The "obvious alternative explanation," *Iqbal*, 556 U.S. 682, for CSU-Pueblo's conduct, if not the most likely explanation, is that in accordance with its obligation to enforce Title IX standards and pursuant to its sexual misconduct policy: (1) officials responded promptly to a complaint involving a student; (2) officials provided Plaintiff notice of the underlying complaint, met with the alleged victim and with Mr. Neal on at least three occasions and heard his version of events; (3) after investigation, Defendants rejected Plaintiff's version of events, at least in part, and determined sufficient and reliable evidence existed under the OCR standards, to find a violation of University policy had occurred and to impose discipline; and (4) conducted appropriate follow-up training for the student-athletes consistent with its obligations under Title IX. This explanation of lawful intent is consistent with the pleaded facts [ECF No. 8, ¶¶ 110, 114, 141, 147, 149, 174, 177, 178, 313, 316] and entirely plausible.

A plaintiff like Mr. Neal must allege nonconclusory facts that, if taken as true, would be *specifically* suggestive of an unlawful motive on the part of University administrators. Plaintiff's allegations with respect to remarks made by University staff expressing concerns about conduct issues within the athletic department, or his impressions of their demeanors, fall far short of that mark. Contrary to Plaintiff's assertions, Defendants have not argued and do not argue now that Plaintiff's allegation of unlawful motive must be the "most plausible" in order to overcome the 12(b) motion. Rather, Defendants contend that Plaintiff has failed to make an allegation of discrimination that could be plausible at all. He must allege facts that are more than merely consistent with both his proffered explanation for the Defendants' conduct and the Defendants' competing explanation. He has not done so. Nor have the Defendants, as Plaintiff has charged, "ignore[d] pleaded facts." [ECF. No. 55]. Indeed, Defendants acknowledge that Plaintiff has advanced lengthy allegations in his 90 page Amended Complaint that dissect Plaintiff's version

of the sexual encounter, communications with Jane Doe, his version of what transpired during the disciplinary proceedings, and Plaintiff's perceptions about the motivations of the various administrators. However, when it comes to linking those allegations to discriminatory motives or conduct, Plaintiff can only do so in an inferential and conclusory manner (e.g., "The CSUP Defendants demonstrated a bias against Plaintiff as the male accused when they failed to inform him of the nature of the allegations against him." [ECF No. 55, ¶174]), which is insufficient under *Iqbal* and *Twombly*.

In addition, Defendants have argued that there is an "obvious alternative explanation" for Title IX's disproportionate impact on males: the fact that most sexual assault complaints are made by females against males. [ECF No. 27, p. 13]. As cited in Defendants' motion, numerous courts across the country have ruled that the disproportionate impact of sexual misconduct policies on males due to the mere fact that complainants are overwhelmingly female, will not support a Title IX gender discrimination claim. *Id.*

Plaintiff asks this Court to review the allegations "as a whole in the totality of the circumstances," that "describe how CSUP made an erroneous finding of Neal being responsible for sexual misconduct, . . ." in order to infer that an erroneous outcome was reached as a result of a discriminatory motive. [ECF No. 55, pp. 10-12; 17-18]. Once again, Plaintiff misapprehends the meaning and application of the *Iqbal/Twombly* standard. The standard is not governed by the sheer number of allegations and all the surrounding circumstances as described from Plaintiff's point of view. The essence of Plaintiff's claims is that his version of the alleged sexual encounter and relationship with Jane Doe were not accepted by the investigator and hearing officer. Plaintiff concludes this result can only be explained by gender bias. However, this Court "is not tasked with weighing Plaintiff's account of the alleged sexual assault against Jane Doe's account

of the event, or with weighing in on how universities should address sexual misconduct on campus. The Court's task is simply to determine whether Plaintiff alleged sufficient non-conclusory allegations to plausibly infer that he was discriminated against <u>because of his sex</u>." *See Doe v. Univ. of California*, 2016 U.S. Dist. LEXIS 123612 (C.D. Cal. July 25, 2016) (emphasis added). As to the narrow issue to be reviewed, Plaintiff's claim fails.[3]

## II. Plaintiff fails to state a claim for gender discrimination pursuant to Title IX.

The Second Circuit's decision in *Doe v. Columbia Univ*., 2016 U.S. App. LEXIS 13773 (2d Cir. N.Y. July 29, 2016) is neither legally dispositive, factually on-point, nor good policy. Nevertheless, Plaintiff urges this Court to follow its ill-advised lead in contravening the pleading standard set forth by the United States Supreme Court in *Twombly,* 550 U.S. at 555 and *Iqbal,* 556 U.S. at 679. This Court should decline Plaintiff's invitation to markedly depart from precedent in favor of a standard which undermines settled principles of judicial deference to universities' educational judgment, particularly those pertaining to student discipline. *See Davis v. Monroe Cnty Bd. of Educ.,* 526 U.S. 629, 648 (1999) ("[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators."). Notably, decisions in Title IX cases issued subsequent to *Columbia* follow *Twombly* and *Iqbal*. *See Painter v. Doe*, 13-cv-0369-MOC-DCK (W.D. N.C. July 31, 2016) (applying *Iqbal* and dismissing Title IX claim which included allegations that a university treated males and females accused of rape

---

[3] Two years ago, this Court dismissed a similar claim by the male-accused pursuant to Title IX. *See Johnson v. Western State Colo. Univ.*, No. 13-cv-2747-WJM-KMT, Order Granting in-Part and Denying in-Part Defendants' Motion to Dismiss [ECF No. 173], attached as Exhibit B-1. Plaintiff attempts to distinguish the facts of the *Western University* case by focusing on the allegations related to the opposite gender of the decision-makers. However, similar to the flawed claims in this case, the plaintiff in *Western University* also relied on evidence of a consensual sexual relationship, conclusory allegations about staff motivations and other speculation to infer discriminatory intent. The *Western* plaintiff's claims and those in the instant matter are strikingly lacking in any non-conclusory allegations of gender bias. In addition, the *Western* plaintiff, while identifying various shortcomings in the school's disciplinary process, also admitted throughout the multiple versions of his complaint that he did, in fact, receive notice and opportunity to be heard.

differently); *see also Austin v. Univ. of Or.*, 2016 U.S. Dist. LEXIS 121198 (D. Or. Sept. 8, 2016).[4]

The Second Circuit's reasoning is further flawed in its reliance on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), utilized in Title VII employment discrimination cases. This framework is misplaced and the risk associated with a diminished pleading standard cannot be overlooked here. Columbia's recently filed Petition for Rehearing observes that "[b]y shifting the burden to a university to justify the outcome of a disciplinary proceeding, while categorically discounting [its] obvious and legitimate explanation for the result – *i.e.*, its efforts to comply with Title IX and to confront campus sexual misconduct… the panel's decision makes it essentially impossible for a university to defeat even the most specious Title IX claim on a motion to dismiss… [and] university disciplinary decisions will routinely become the subject of re-litigation in federal court, with all the attendant burdens… The panel's decision thus undermines longstanding principles recognizing the importance of deference to university administrators in their educational judgments." *Doe v. Columbia Univ.*, 15-1661 [Doc. 105, Pet. Rehearing] (2d Cir. Aug. 26, 2016).[5]

---

[4] In rejecting the Second Circuit's analysis, the District Court of Oregon observed: " . . . [T]o accept the Second Circuit's pleading standard would put universities in a double bind. Either they come under public fire for not responding to allegations of sexual assault aggressively enough or they open themselves to Title IX claims simply by enforcing rules against alleged perpetrators. Given these circumstances, Plaintiffs have failed to show how the University's enforcement of its student conduct code, even if it had been overzealous, equates to sex discrimination." *See Austin v. Univ. of Or.*, 2016 U.S. Dist. LEXIS 121198.

[5] Moreover, as Columbia emphasizes in its Petition, the burden-shifting framework is inapplicable to Title IX because "a claim ordinarily arises in the Title IX disciplinary context only after a student has been through a full investigation and disciplinary process, conducted pursuant to written policies and procedures as required by Title IX," while in the employment context, "employees may not be told the reason for the adverse action taken against them, and so imposing [the] burden of production on defendants requires them to 'frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.'" *Doe v. Columbia Univ.*, 15-1661 [Doc. 105, Pet. Rehearing] (2d Cir. Aug. 26, 2016), pp. 10-13. (citations omitted).

Even if an application of the Second Circuit's reasoning was prudent and supportable, *Columbia* is factually distinguishable. In *Columbia,* Plaintiff alleged the University was under investigation by the Department of Justice as the result of twenty-three student complaints of insufficient response to allegations of sexual misconduct and was the subject of negative press and community protest which predated the disciplinary investigation at issue. Additionally, pressure focused on Columbia's Title IX investigator who Plaintiff alleged was "motivated by pro-female bias, attributable in part to a desire to refute criticisms of herself and of the University for their past handling of similar complaints." *Doe v. Columbia Univ.*, 2016 U.S. App. LEXIS 13773 *16. In the view of the Second Circuit panel, the scenario of an institution under internal and external pressure to address sexual misconduct "nudged [the discrimination] claims across the line from conceivable to plausible," *Twombly,* 550 U.S. at 570. These facts are absent from the instant case. Plaintiff has not and cannot allege that CSU-Pueblo was under scrutiny for past mishandling of sexual misconduct complaints, nor was there negative press coverage related to sexual misconduct incidents prior to Plaintiff's disciplinary action.[6] Even if Plaintiff had stated specific facts demonstrating a push for reform to address sexual misconduct at CSU-Pueblo, connecting these circumstances to the outcome of Plaintiff's disciplinary case relies on speculation, at best. As the court in *Austin v. Univ. of Or.*, 2016 U.S. Dist. LEXIS 121198, recognized in expressly rejecting the *Columbia* framework, "Plaintiffs make no similar allegations of an atmosphere of scrutiny and, even had they… there remains no plausible

---

[6] The only media attention generated by CSU-Pueblo's sexual misconduct policy is that sought by Plaintiff and his counsel following the disciplinary action and the filing of this lawsuit. Plaintiff makes a conclusory reference to "both internal and external pressures to handle sexual misconduct complaints more aggressively." [ECF No. 55, p. 20]. However, these allegations, that are prefaced by the phrase "upon information and belief," rely upon vague references to alleged coercion applied to all universities by the OCR's 2011 "Dear Colleague" letter and unsupported claims about pressure to reach a "quota" of disciplinary actions. [ECF No. 8, ¶¶14, 165, 172-73, 206-211, 217]. These speculative claims cannot support any inference of discriminatory motive.

inference that a university's aggressive response to allegations of sexual misconduct is evidence of gender discrimination…" *See also, Doe v. University of Cincinnati*, 2016 U.S. Dist. LEXIS 37924 *30-31 (S.D. Ohio Mar. 23, 2016) ("it is not reasonable to infer that [the University] has a practice of railroading students accused of sexual misconduct simply to appease the Department of Education and preserve its federal funding."); *Doe v. Univ. of California*, 2016 U.S. Dist. LEXIS 123612 *14 ("To impute gender bias on [University employees] based on a critique made by a third party is purely speculative.").

There are other significant factual differences from *Columbia*. Plaintiff retained advisors during his investigatory meetings with Defendant Wilson and his hearings with Defendant DeLuna, [ECF No. 8, ¶131 (Head Football Coach John Wristen); ¶136 (attorney Chris Turner)], while it was alleged in *Columbia* that the accused was not apprised of the "resources available to him." *See Doe v. Columbia Univ.*, 2016 U.S. App. LEXIS 13773 *6. When the *Columbia* student reported harassment and assault on campus by his accuser's friends to Title IX investigators, his pleas were ignored. Meanwhile, Plaintiff alleges no instances in which a male's complaints of harassment were treated with indifference by CSU-Pueblo administrators as compared to the treatment afforded to a female student's complaint. *See Austin v. Univ. of Or.*, 2016 U.S. Dist. LEXIS 121198 *18 (Plaintiff's failure to adequately allege his treatment within the disciplinary process was tied to his male-gender and that a similarly situated female student was treated more favorably, is fatal to his claim); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009) (claim requires evidence that a similarly situated female was treated more favorably); *see also Doe v. Regents of the Univ. of Cal.*, No. 2:15-cv-02478-SVW-JEM, 9 (C.D. Cal. July 25, 2016) (dismissal of Title IX claim where plaintiff failed to adequately allege his was suspension motivated by gender or a similarly situated female student was treated more leniently). Finally,

while the accused student in *Columbia* alleged that he had tendered the names of witnesses prior to his hearing which were ignored, Plaintiff did not make similar allegations and instead, alleged that he waited until the appeal stage to disclose a second sexual encounter with Jane Doe that had been witnessed by his roommates. [ECF No. 8, ¶¶ 105, 163]. The procedural deficits alleged in *Columbia* that supported the plaintiff's claim of an erroneous outcome resulting from discriminatory motives, are absent from Plaintiff Neal's allegations.

Plaintiff's allegations are simply insufficient to state a claim pursuant to Title IX and his attempts to impute gender bias on CSU-Pueblo staff, are mere conjecture.[7] That witnesses or even the Title IX investigator, Mr. Wilson, made comments demonstrating concerns about the number of recent complaints involving student athletes does not equate to gender bias against males.[8] As the court in *Gomes v. University of Maine Sys.*, 365 F.Supp.2d 6, 31-32 (D. Me. 2005), observed, "[t]here is not exactly a constituency in favor of sexual assault, and it is difficult to imagine a proper member of the [investigation] not firmly against it. It is another matter altogether to assert that, because someone is against sexual assault, []he would be unable to be a fair and neutral [investigator] as to whether a sexual assault had happened in the first place." *See also Doe v. University of Cincinnati*, 2016 U.S. Dist. LEXIS 37924 *29-30 (quoting *Gomes*). Also, bias against students accused of sexual assault is not the same as gender bias as both victims and assailants can be either male or female. *See Sahm v. Miami Univ.*, 110 F.Supp.3d 774, 778-79 (S.D. Ohio 2015).

---

[7] "Alleged prejudice of university hearing bodies must be based on more than mere speculation and tenuous inferences." *See Duke v. North Texas St. Univ.*, 469 F.2d 829, 834 (5th Cir. 1972). Like the student in *Osei v. Univ. of Maryland Univ. Coll.*, 2016 U.S. Dist. LEXIS 107376 *24 (D. Md. Aug. 15, 2016), "beyond mere speculation, Plaintiff offers no factual allegations indicating any purported bias…" of the investigator, hearing officer, or appellate reviewer.

[8] Plaintiff's conclusory allegation of bias attributed to Ms. Clark, in particular, should be "give[n] limited weight… given that she was not a member of the disciplinary tribunal that issued the decision against Plaintiff." *See Doe v. Univ. of California*, 2016 U.S. Dist. LEXIS 123612 *14.

Plaintiff here has asked this Court to utilize an unworkable standard to allow his Title IX erroneous outcome claim to proceed past the initial pleading stage. Even if this Court did adopt the Second Circuit's analysis, Plaintiff's claim would still fail because he has not alleged sufficient, non-conclusory facts demonstrating any disparate treatment or motivation, on behalf of CSU-Pueblo officials, to aggressively discipline male students, that can be linked to an erroneous outcome in his case.

**III. Defendants are entitled to qualified immunity because Plaintiff failed to link any of his allegations of procedural short-comings to clearly established law demonstrating a violation of constitutional standards.**

Contrary to Plaintiff's assertions, the issue of qualified immunity is routinely resolved in this Circuit at the motion to dismiss stage. *See Harman v. Pollock,* 446 F.3d 1069 (10th Cir. 2006); *Sanchez v. Labate,* 564 Fed. Appx. 371 (10th Cir. 2014); *Rathbun v. Montoya*, 628 Fed. Appx. 988 (10th Cir. 2015); *Davis v. Bruce,* 129 Fed. Appx. 406 (10th Cir. 2005). "Qualified immunity is an **immunity from suit,** rather than a mere defense to liability." *Brown v. Montoya,* 662 F.3d 1152, 1161 (10th Cir. 2011) (emphasis added). Because "[t]he central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties, and from potentially disabling threats of liability,'" *Elder v. Holloway,* 510 U.S. 510, 513 (1994) (*quoting Harlow,* 457 U.S. at 806), the doctrine of qualified immunity requires this Court to resolve the issue of qualified immunity "at the earliest possible stage in litigation." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Plaintiff's argument that this defense has been raised prematurely or that it is preferred that such defense be addressed at the summary judgment stage, is without merit.

Plaintiff responds to Defendants' qualified immunity arguments by simply re-listing the allegations describing the various events that occurred during the disciplinary process. He fails to cite to any Supreme Court or Tenth Circuit authority establishing that the specifics of the notice

and hearing, as alleged by Plaintiff, would constitute a violation of the Fourteenth Amendment. In resolving the issue of qualified immunity, the Court must first consider whether Plaintiff alleged a deprivation of an actual constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). In doing so, the Court may consider only the facts alleged in Plaintiff's Amended Complaint and accept as true all well-pleaded factual allegations. *Wittner v. Banner Health,* 720 F.3d 770, 775 (10th Cir. 2013). Here, Plaintiff's Amended Complaint does not set forth sufficient allegations demonstrating that Plaintiff was deprived of an actual constitutional right.

For example, Plaintiff argues that he was deprived of (1) the right to written notice, (2) the right to a hearing; (3) the right to question the accuser; (4) the right to challenge the credibility of witnesses; and (5) the right to present evidence and witnesses in support of his defense. [ECF No. 55, p. 25]. Plaintiff, however, cites to no legal authority in support of his claim that the process he does admit to receiving, which included written notice, meeting with the investigator, meeting with the hearing officer, and an opportunity to file an appeal, failed to satisfy constitutional standards. Indeed, Plaintiff's arguments ignore his own allegations and legal authority that is binding upon this Court.

Within the context of student disciplinary hearings, notice of the charges can be given in writing or orally. *Goss v. Lopez,* 419 U.S. 565, 581 (1975); *Cleveland Bd. Of Educ. V. Loudermill,* 470 U.S. 532 (1985). *Goss,* 419 U.S. at 581. Plaintiff alleged that he received notice of the charges against him in at least six separate paragraphs of the Amended Complaint. [ECF No. 8, ¶¶ 117, 122, 124, 129, 131; 133]. Plaintiff specifically alleged that the CSU-Pueblo Defendants told him that he was accused of violating section 18 of the Code of Student Conduct, Sexual Misconduct (non-consensual sexual intercourse). [ECF No. 8, ¶135]. Based upon Plaintiff's own allegations, the CSU-Pueblo Defendants complied with the notice requirements

stated in *Goss.* Plaintiff's dissatisfaction with the wording of the written notice or belief that it was incomplete, does not state a violation of a clearly established constitutional right.

Plaintiff also argues that he was deprived of the opportunity to be heard because he did not have a formal hearing. [ECF No. 55, pp. 24-25]. However, Due Process simply requires that a student be given an opportunity to present his side of the story. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. at 546; *Goss,* 419 U.S. at 581. The hearing need not take the form of a judicial or quasi-judicial trial – not even in the case of expulsion. *Linwood v. Board of Educ. Of the City of Peoria,* 463 F.2d 763, 770 (7th Cir.) *cert. denied,* 409 U.S. 1027 (1972). Rather, all that is required is an "informal give-and –take between student and disciplinarian" which would give Plaintiff "the opportunity to characterize his conduct and put it in what he deems the proper context." *See Goss,* 419 U.S. at 584. Here, Plaintiff alleged that he had numerous opportunities to present his side of the story and did so. [ECF No. 8, ¶¶ 122, 131, 133, 136, 139, 148, 152, 165].

Plaintiff has not and cannot cite to any legal authority establishing a clearly established constitutional right to cross-examine witnesses against him in the context of a student disciplinary hearing. In fact, confronting witnesses is not an absolute right and is generally not part of the due process requirement in a school disciplinary setting. *Watson v. Beckel,* 242 F.3d 1237, 1242-43 (10th Cir. 2001); *Gaspar v. Bruton,* 513 F.2d 843 (10th Cir. 1975)(affirming dismissal of a due process claim based in part upon inability to cross-examine witnesses); *Sterrett v. Cowan*, 85 F.Supp.3d 916, 929 (E.D. Mich. 2015)("confronting the Complainant, let alone other witnesses, is not an absolute right and is generally not part of the  due process requirement in a **school** disciplinary setting").

Finally, Plaintiff argued that he was deprived of the opportunity to present witnesses and evidence. [ECF No. 55, pp. 24-25]. This claimed "right" is based upon the CSU-Pueblo Defendants' Sexual Misconduct Policy. [ECF No. 8, at ¶ 150]. However, violation of student judicial policies is not a denial of due process, even if the state law confers a procedural right, because the standard of due process is federal. *See Cleveland Board of Education,* 470 U.S. at 542. In any event, Plaintiff's allegation that he was denied the opportunity to present witnesses is belied by his admission that he twice met with Defendant Wilson to present his version of events [ECF No. 8, ¶¶122, 131] and on December 4, 2016, with hearing officer, Defendant DeLuna. [ECF No. 8, ¶¶136,152]. He does not allege that during those meetings, he brought witnesses with him who were denied an opportunity to give their accounts or that prior to these meetings, he requested an opportunity to present witnesses which was denied by Wilson or Deluna. Instead, he merely alleges he was "not afforded the opportunity to identify witnesses favorable to his defense." Noticeably, Plaintiff did not allege nor can he prove that the CSU-Pueblo Defendants denied him the right to bring his roommate witnesses and the secret recording with Doe to the December 4, 2015 hearing with Defendant DeLuna. [ECF No. 8, ¶¶95, 104].[9]

Absent an allegation that he attempted to present witnesses and was denied the same, his admitted meetings with University officials to present his version of events, satisfy constitutional due process standards. For these reasons, Plaintiff failed to sufficiently allege an actual constitutional violation and his Section 1983 claim fails as a matter of law.

### IV.     Plaintiff failed to state a claim for breach of contract.

---

[9] It was not until after the Plaintiff's December 4th hearing with Defendant DeLuna and during a second meeting with her that Plaintiff asked to "identify" witnesses and inquired about the need for "character witnesses." [ECF No. 8, ¶¶143, 163]. This request made after the hearing, he alleges, was denied by Defendant Deluna. *Id.*

Plaintiff relies on the Colorado Court of Appeals' decision in *Davis v. Regis Coll., Inc.*, 830 P.2d 1098, 1100 (Colo. App. 1991), for the premise that "the relationship between a student and a university is grounded in contract…" Notably, in applying Colorado law, opinions of the Colorado Court of Appeals are highly persuasive but not binding. *See United States v. Richter*, 796 F.3d 1173, 1185 n.6 (10th Cir. 2015). Nevertheless, as the CSU-Pueblo Defendants acknowledged in their motion, a student can "assert [a] breach of contract" if the university made "an <u>academic</u> decision…" *See Davis,* 830 P.2d at 1100. (Emphasis added). However, Plaintiff does not challenge an academic decision but rather a disciplinary decision. The "enrollment agreement[] and catalog[]" discussed in *CenCor, Inc. v. Tolman,* 868 P.2d 396, 399 (Colo. 1994), are distinguishable from CSU-Pueblo's Student Code of Conduct and Sexual Misconduct Policy. The former are part and parcel to the academic relationship between student and school, while the latter clarify the University's expected behavioral norms for a student such as Plaintiff pursuing the academic degree that is the subject of the contractual relationship between the parties. Colorado law does not support a contractual relationship between a university and student based on a conduct policy.

### V.   Plaintiff's claim for promissory estoppel is barred by Colorado's Governmental Immunity Act.[10]

Colorado's Governmental Immunity Act (CGIA) prohibits suit against state entities and state employees that lie, or could lie, in tort, except in a limited set of circumstances. The exceptions set out in section 24-10-106(1), C.R.S. (2015), define the subject matter jurisdiction

---

[10] Defendants' challenge to Plaintiff's promissory estoppel claim is premised on a lack of subject matter jurisdiction and is reviewed under Fed. R.Civ.P. 12(b)(1). *See KVOS, Inc. v. Associated Press,* 299 U.S. 269 (1936). Under a Rule 12(b)(1) challenge, the court may consider matters outside the pleadings that challenge the averments upon which the court's jurisdiction depends. *Axtell v. United States*, 860 F. Supp. 795, 797 (D.Wyo. 1994). The burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266 (6th Cir.1990).

of the court to hear claims against public entities and public employees. *Fogg v. Macaluso*, 892 P.2d 271, 276 (Colo. 1995).

Plaintiff's Seventh Claim for Relief for "promissory estoppel," while framed as a quasi-contract claim, is premised on an injury arising out of alleged tortious conduct by the CSU-Pueblo Defendants, that is, wrongfully suspending Plaintiff from enrollment based on gender bias. Where the nature of the injury and the relief requested implicate both tort and contract, the claims are barred by the CGIA, while claims arising solely in contract are not subject to the CGIA. *Robinson v. Colorado State Lottery Division,* 179 P.3d 998, 1004 (Colo. 2008) (unjust enrichment claim brought by plaintiff for alleged misrepresentations concerning available lottery prizes could lie in tort and were therefore barred by the CGIA). Here, the claims and injuries alleged by Plaintiff undoubtedly overlap because he relies upon the same allegations to support claims stated in both tort and quasi-contract against the CSU-Pueblo Defendants. Therefore, the claim is barred by the CGIA. *Id.*

Additionally, Plaintiff's tort claims are barred by Colo. Rev. Stat. § 24-10-109(1), because Plaintiff has not and cannot allege that he served Notice of Claim within 182 days of the time he discovered his injury. The CGIA requires a plaintiff claiming to have suffered any injury by an employee of a public entity to file written notice "within one hundred eighty-two days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury." § 24-10-109(1), C.R.S. Compliance with the provisions of C.R.S. § 24-10-109 is a "*jurisdictional prerequisite* . . ., and failure of compliance shall forever bar any such action." *Id.*; *see also Renalde v. City & County of Denver,* 807 F. Supp. 668, 675 (D. Colo. 1992) (notice requirements are a jurisdictional prerequisite to maintaining state law claims). Plaintiff's appeal of his suspension was denied by Defendant

Humphreys on January 19, 2016. [ECF No. 8, ¶163]. Therefore, Plaintiff was required to serve a Notice of Claim on the Colorado Attorney General's Office within 182 days of this event, or by July 22, 2016.[11] His claim for promissory estoppel must be dismissed pursuant to Fed. R.Civ.P. 12(b)(1).

Even if this Court did have jurisdiction over Plaintiff's promissory estoppel claim, the claim fails as a matter of law, as explained by Defendants' arguments in the initial motion that Plaintiff has not refuted in his response. [ECF No. 27, pp. 23-25]. He merely re-lists the elements of a promissory estoppel claim and makes a conclusory statement that he relied on CSU-Pueblo policies when he accepted admission to the school. [ECF No. 55, pp. 32-33]. In any event, with respect to detrimental reliance, it is difficult to conceive of a claim premised on the idea that any student, when deciding to enroll, relies upon the single-investigator or hearing panel model for Title IX investigations. To the extent Plaintiff did so rely, he must then take CSU-Pueblo's choice of the single-investigator model as he finds it in the Student Code of Conduct.

**VI. Plaintiff's request for leave to amend the claim is not appropriately asserted within a response to a Rule 12(b) motion.**

Plaintiff cannot salvage his claims by inserting a request for leave to amend at the close of his response to the Motion to Dismiss. Pursuant to Fed. R. Civ. P. 15(a)(2) "a party may amend its pleading only with the opposing party's written consent or the court's leave." It is improper to respond to a motion with a request for leave to amend. Should the Motion to Dismiss [ECF No. 27] be granted in whole or in part, *without prejudice*, Plaintiff must file a Motion for

---

[11] The time period for filing Notice of Claim pursuant to § 24-10-109, C.R.S., had not lapsed as of the date Defendants filed their initial Motion to Dismiss, on July 11, 2016. However, jurisdictional issues such as the standing of a party to raise claims for relief may be raised "at any time" in the judicial process. *Board of County Commissioners v. W.H.I., Inc.*, 992 F.2d 1061, 1063 (10th Cir. 1993), citing *Juidice v. Vail,* 430 U.S. 327, 331 (1977).

Leave to Amend in a separate pleading to which Defendants will have an opportunity to object. *See also,* DC.Colo.LCivR 15.1(b).

To the extent Plaintiff intends to address the deficiencies in his claims by way of a second amended complaint, the amendments would be futile. *See Jefferson County. Sch. Dist. v. Moody's Investor's Servs.,* 175 F.3d 848, 859 (10th Cir.1999) ("A proposed amendment is futile if the complaint, as amended would be subject to dismissal."); *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir.1999) ("The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim."). Plaintiff has filed a 90 page Amended Complaint, consisting of at least 138 separate factual allegations in support of the claims stated against the CSU-Pueblo Defendants. It is difficult to imagine what additional evidence Plaintiff could supply of discriminatory intent (that could not be equally explained by lawful intent) or evidence that could elevate the procedural flaws already described therein to conduct that violates the Fourteenth Amendment. *See Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) ("a court will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to present theories seriatim in an effort to avoid dismissal").

## CONCLUSION

**WHEREFORE**, CSU-Pueblo Defendants respectfully request that Plaintiff's Amended Complaint [ECF No. 8] be dismissed in its entirety.

    CYNTHIA H. COFFMAN
    Attorney General

    *s/ Amy Colony*
    AMY COLONY*
    Senior Assistant Attorney General
    ALISON AILER
    LAUREN JAYE BECKER
    JACQUELYNN N. RICH FREDERICKS

Assistant Attorney(s) General
Attorneys for CSU-Pueblo Defendants
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6600
FAX: (720) 508-6032
Email(s): amy.colony@coag.gov
 allison.ailer@coag.gov
 jacquelynn.richfredericks@coag.gov
 lauren.becker@coag.gov
*Counsel of Record

## CERTIFICATE OF SERVICE

I certify that I served the foregoing **CSU-PUEBLO DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [ECF NO. 8] PURSUANT TO FED. R. CIV. P. 12(B)(1) and 12(B)(6)** upon all parties herein by e-filing with the CM/ECF system maintained by the court or by depositing copies of same in the United State mail, first-class postage prepaid, at Denver, Colorado, this 30th day of September 2016 addressed as follows:

Michael J. Mirabella, Esq.
450 E. 17th Avenue, Suite 400
Denver, CO 80203
mmirabella@mbellalaw.com

Andrew T. Miltenberg, Esq.
Tara J. Davis, Esq.
Jeffrey Berkowitz, Esq.
363 7th Avenue, Fifth Floor
New York, NY 10001
amiletenberg@nmllplaw.com
tdavis@mmllplaw.com
jberkowitz@mmllplaw.com

Matt Berns
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530
(202) 616-8016
Matthew.J.Berns@usdoj.gov

*s/ Amy Colony*
_____