IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:16-cv-00873-RM-CBS

**GRANT NEAL,**

                Plaintiff,

  -against-

**COLORADO STATE UNIVERSITY-
PUEBLO,** *et al.*,

                Defendants.
_____

**PLAINTIFF GRANT NEAL'S OBJECTIONS TO THE RECOMMENDATION
OF THE MAGISTRATE JUDGE WITH RESPECT TO GRANTING IN PART
THE FEDERAL DEFENDANTS' MOTION TO DISMISS BASED ON STANDING**
_____

**PRELIMINARY STATEMENT**

Plaintiff Grant Neal ("Neal") respectfully submits these Objections to the part of the Recommendation dated February 16, 2017 of the Magistrate Judge Craig B. Shaffer concerning disposition of the Federal Defendants' motion to dismiss at pages 53-58 of the filed slip document.

Neal is a male student athlete who it is alleged was erroneously found responsible for sexual misconduct and suspended from Colorado State University-Pueblo ("CSU-Pueblo") for alleged sexual misconduct based on what is alleged to be a procedurally flawed and biased disciplinary proceeding that was in conformance with the "Dear Colleague Letter" issued April 4, 2011 (hereinafter, "2011 Dear Colleague Letter") by the Office of Civil Rights ("OCR") of the U.S. Department of Education ("DOE"). The Federal Defendants[1] oppose their inclusion in this

---

[1] The Federal Defendants are the United States, the U.S Department of Education ("DOE"), the Office of Civil Rights ("OCR") in the DOE, then-Secretary of Education John B. King Jr., then Assistant Secretary for the OCR Catherine Lhamon.

case, blithely asserting that the relief Neal seeks from the CSU-Pueblo Defendants[2] will provide a full remedy for him. (Fed. Dfs. Mem. 1.) It won't. As a result, Neal has sued the Federal Defendants, alleging that the OCR violated the Administrative Procedure Act ("APA") because the OCR did not engage in public notice and comment before issuing the 2011 Dear Colleague Letter while enforcing it as binding law.

The Federal Defendants, in denying that the 2011 Dear Colleague Letter is a substantive rule requiring that it undergo notice and comment rulemaking, assert that if Neal's challenge to the 2011 Dear Colleague Letter were before the Court, the Federal Defendants would show that Neal's APA claim has no merit. (Fed. Dfs. Mem. 2.) The Federal Defendants, however, do not base their motion to dismiss on that substantive argument, but rather make a Federal Rule of Civil Procedure 12(b)(1) motion for lack of standing by Plaintiff to challenge the lawfulness of the 2011 Dear Colleague Letter and a Federal Rule of Civil Procedure 12(b)(6) motion for lack of reviewability under the APA.

In response to the Federal Defendants' motion to dismiss, the Magistrate Judge's Recommendation concludes that the branch of the Federal Defendants' motion to dismiss made under Rule 12(b)(1) should be granted without prejudice because Neal lacks standing, but the Magistrate Judge's Recommendation does not reach the branch of the Federal Defendants' motion to dismiss made under Rule 12(b)(6).

Neal's Objections consist of three main points. *First*, unaddressed by the Magistrate Judge's Recommendation but necessary to correctly deciding the Federal Defendants' motion to dismiss, the 2011 Dear Colleague Letter is a substantive rule unlawfully promulgated without

---

[2] The CSU-Pueblo Defendants are: CSU-Pueblo; The Board of Governors of the Colorado State University System; Roosevelt Wilson, as agent for CSU-Pueblo; Jennifer De Luna, as agent for CSU-Pueblo; Lesley Di Mare, as agent for CSU-Pueblo; Kaitlyn Blakey, as agent for CSU-Pueblo; Marie Humphrey, as agent for CSU-Pueblo.

compliance with the APA public notice and comment requirements. *Second*, contrary to the Magistrate Judge's Recommendation and the Federal Defendants' Rule 12(b)(1) motion, Neal has standing to sue the Federal Defendants under Article III of the U.S. Constitution applying the Supreme Court's three-prong test in *Lujan v. Defenders of Wildlife, et al*, 504 U.S. 555, 560-561 (1992). *Third*, contrary to the Federal Defendants' Rule 12(b)(6) motion, this action against the Federal Defendants brought to remedy the illegality of the 2011 Dear Colleague Letter is authorized under the APA's provision for suit where "there is no other adequate remedy in a court." 5 U.S.C. § 704. Accordingly, the Court should sustain Neal's Objections and deny the Federal Defendants' motion to dismiss in its entirety.

## ARGUMENT

**I.     The 2011 Dear Colleague Letter Is A Substantive Rule Unlawfully Promulgated Without Compliance With The APA's Public Notice and Comment Requirements.**

The Magistrate Judge's Recommendation did not address the substantive merits of the Complaint, but necessary to a correct decision on the Federal Defendants' motion to dismiss is an understanding of why the 2011 Dear Colleague Letter is a substantive rule unlawfully promulgated without compliance with the APA's public notice and comment requirements codified at § 553 of the APA.

The 2011 Dear Colleague Letter does state that it merely interprets already existing law (Fed. Dfs. Mem. 2, 6-7); however, as pointed out in the Amended Complaint, the 2011 Dear Colleague Letter does not point to precise governing statutory or regulatory language that supports the directives contained in the 2011 Dear Colleague Letter (Amended Complaint ¶¶ 266, 271, 277, 410; *see* Fed. Dfs. Ex. 1). *See City of Waukesha v. Envtl. Prot. Agency,* 320 F.3d 228, 235 (D.C.Cir. 2003) ("[I]n reviewing the standing question, the court must be careful not to decide the

questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims.")

The U.S. Supreme Court has ruled that a crucial differentiation between substantive rules and interpretative statements is whether they affect "individual rights and obligations." *Chrysler Corp. v. Brown*, 441 U.S. 281, 301-302 (1979); and the D.C. Circuit applied that distinction in *Community Nutrition Institute v. Young*, 818 F.2d 943, 946 (D.C. Cir. 1987). The analysis in these cases examines whether the agency uses mandatory words such as "must," "shall," and/or "will" and whether the agency intended to bind itself by the publication.

The 2011 Dear Colleague Letter's pervasive use of the term "must" is precisely the kind of mandatory language that is "a powerful, even potentially dispositive, factor suggesting… substantive rules." *Community Nutrition Institute v. Young*, 818 F.2d at 947. Specifically, the 2011 Dear Colleague Letter provides that: (i) recipient schools "must" disseminate a notice of non-discrimination that "must" state that inquiries concerning the application of Title IX may be referred to the recipient school's Title IX coordinator and that "must" be widely distributed to all students, parents, employees and admission applicants; (ii) recipient schools "must" designate an employee as a Title IX coordinator and "must" ensure that employees designated to serve as Title IX coordinators have adequate training on what constitutes sexual harassment; (iii) recipient schools are required by Title IX regulations to adopt and publish grievance procedures that "must" apply to sex discrimination complaints filed by students against employees, other students or third parties; (iv) recipient schools "must" use disciplinary procedures that meet the requirement of a "prompt and equitable resolution" and that "must apply to all students, including athletes"; (v) recipient schools should not wait for the conclusion of a criminal investigation or criminal proceeding to begin their own investigation, and "must" take interim measures if necessary to

protect a student and "must" promptly resume its own fact-finding if delayed by police evidence gathering; (vi) recipient schools, in its grievance procedures, "must use a preponderance of the evidence standard (*i.e.*, it is more likely than not that sexual harassment or violence occurred)"; (vii) recipient schools "must" provide parties an equal opportunity to present relevant witnesses and other evidence and "must" afford to complainant and alleged perpetrator similar and timely access to information that will be used at a hearing; (viii) the Defendant OCR *strongly* discourages recipient schools from allowing the parties to personally question or cross-examine each other during the hearing because of the traumatic effect on the complainant; (ix) recipient schools "must" maintain documentation of all proceedings; (x) recipient schools "must" require all persons involved in the recipient school's grievance procedures to have training or experience in handling complaints of sexual harassment; (xi) recipient schools, if they provide an appeal process, "must" make it available for both complainant and the alleged perpetrator; (xii) recipient schools "must" notify both parties in writing about the outcome; (xiii) recipient schools, if they determine that sexual harassment creating a hostile environment has occurred, "must" take immediate action to eliminate the hostile environment, prevent its recurrence and address its effects; and (xiv) recipient schools "must" have policies and procedures in place to protect against retaliatory harassment. (Amended Complaint ¶ 265, 278; Fed. Dfs. Ex. 1, pp. 6-8, 10-13, 15-16.) The 2011 Dear Colleague Letter also includes possible remedies for sexual harassment and sexual violence as well as reporting requirements for recipient schools to the OCR. (Fed. Dfs. Ex. 1, pp. 16-18.)

For these requirements, the Federal Defendants have been unable to cite any statutory or regulatory authority. The Federal Defendants were challenged on this very issue last year by U.S. Senator James Lankford, Chairman of the Subcommittee on Regulatory Affairs and Federal Management. On January 7, 2016, Senator Lankford submitted a letter to Defendant King, and in

that letter Senator Lankford pointed out that the 2011 Dear Colleague Letter failed to identify the precise governing statutory or regulatory language that supported the sweeping changes effected by the 2011 Dear Colleague Letter and that the 2011 Dear Colleague Letter advanced what were effectively regulations properly to be submitted to public notice and comment procedures.  Senator Lankford in his letter thus requested a clarification as to specific statutory and/or regulatory language that the 2011 Dear Colleague Letter purported to construe.  More than one month later, on February 17, 2016, Defendant Lhamon, Assistant Secretary for Civil Rights for OCR, issued a response to Senator Lankford's letter, but that response did not cite to any governing statutory or regulatory authority that the 2011 Dear Colleague Letter was supposedly interpreting. Instead, Defendant Lhamon asserted -- incorrectly -- that the 2011 Dear Colleague Letter was just an interpretative document not requiring submission to public notice and comment and that the DOE was not required to subject the 2011 Dear Colleague Letter to public notice and comment because the regulations promulgated back in 1975 had been.  (Amended Complaint ¶¶ 266-267.)

An interpretive rule of the kind referenced by Defendant Lhamon is one in which the agency merely explains what the agency thinks a statute and set of regulations mean.  *Alcarcaz v. Block*, 746 F.2d 593, 613 (9th Cir. 1984).  A fair example would be the April 2014 OCR Questions and Answers publication submitted by the Federal Defendants to the Court; that publication on its face is one that advises members of the public of the OCR's views.  (Fed. Dfs. Ex. 2.)  The 2011 Dear Colleague Letter, however, is a very different kind of document notwithstanding its avowal of not adding to legal requirements.  (*Compare* Fed. Dfs. Ex. 1 and Fed. Dfs. Ex. 2.)

The Federal Defendants' position that the 2011 Dear Colleague Letter is an interpretive document is not justifiable given that it effectively required changes at recipient schools throughout the United States by ordering compliance with what are directives contained in the

2011 Dear Colleague Letter concerning the disciplining of sexual misconduct. (Amended Complaint ¶¶ 201, 263-264.) Recognizing its widespread effect, Defendant Lhamon testified at a Senate Hearing that the 2011 Dear Colleague Letter has "sparked significant changes at colleges and universities as they worked to meet Title IX's requirements consistent with the 2011 [Dear Colleague Letter]." (Amended Complaint ¶ 263.)

The position of the Federal Defendants is also not justifiable in light of the fact that since 2011, the United States has consistently reaffirmed and adhered to the threat of substantial monetary penalties for non-compliance with the 2011 Dear Colleague Letter. For example, in July 2014, OCR's Defendant Lhamon stated that she would strip federal funding from any college found to be non-compliant with the requirements of the 2011 Dear Colleague Letter, warning "Do not think it's an empty threat." (Amended Complaint ¶ 268.) Such warnings of penalties are not for merely advisory documents, but for substantive rules.

Nor is the position of the Federal Defendants justifiable specifically as to the required use of the preponderance of the evidence standard. The Federal Defendants have cited, in defense of requiring that recipients use the preponderance standard, (i) the civil discrimination case law's use of the preponderance standard and (ii) the OCR's use of a preponderance of the evidence standard when resolving complaints against recipients that may result in funding termination. But neither rationale makes the 2011 Dear Colleague Letter an interpretive document of statutory and/or regulatory provisions; instead, these rationales reflect a substantive rule. Allegations of sexual misconduct involve criminal law implications (allegations of rape and non-consensual sexual conduct are addressed in penal codes) and may result in life-altering consequences to the accused student from a school disciplinary proceeding, as illustrated by Neal's case. Given those consequences and given the nature of the accusations, use of the preponderance standard in civil

discrimination cases and use of a preponderance standard in agency fund termination proceedings do not dictate use of the preponderance standard in adjudication of sexual misconduct complaints at a school. (Amended Complaint ¶¶ 281-283.) To the contrary, a substantive policy judgment is made of a nature that calls for application of the public notice and comment provisions of the APA.

## II.     Neal Has Standing Under Article III of the United States Constitution.

Neal has standing under Article III of the U.S. Constitution because Neal satisfies the three-part test for standing stated by the U.S. Supreme Court in *Lujan v. Defenders of Wildlife, et al.*, 504 U.S. 555 (1992), and quoted by the Magistrate Judge (at slip page 54) as follows:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or hypothetical.'" . . . Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. at 560-561.

### A.     Neal Suffered Injury In Fact.

The first *Lujan* factor is indisputably satisfied by Neal, who has suffered injury in fact: the multi-year suspension resulting from the defective, gender biased proceedings has severely compromised his education and career prospects, as he cannot transfer to another school and cannot attend CSU-Pueblo, he has lost his wrestling and football scholarships, and he has been removed from the football team. (Amended Complaint ¶¶ 11-15, 72-188.) These real damages are concrete and particularized, and these actual damages are not just imminent; they have already been visited upon Neal as a result of the disciplinary sanctions imposed on him. The Magistrate Judge's Recommendations and the Federal Defendants do not try to argue otherwise.

    **B.    The Causal Connection Between The Injury
And The Complained Of Conduct ("Traceability").**

The Federal Defendants dispute the second and third *Lujan* factors, but the Magistrate Judge's Recommendation concerning the Federal Defendants' Rule 12(b)(1) motion rests entirely upon the second *Lujan* factor: the "causal connection" element -- often called the "traceability" element. Neal satisfied this second *Lujan* factor because his injury in fact resulted from the defective, gender biased proceedings that flowed from the unlawful 2011 Dear Colleague Letter and attendant pressure from the DOE. (Amended Complaint ¶¶ 320, 411-412.) The Magistrate Judge's Recommendation got it wrong.

    **1.    The Rationale of the Magistrate Judge's Recommendation on Traceability.**

The Magistrate Judge's Recommendation acknowledges at slip page 54 that "the 'traceability' of a plaintiff's harm to the defendant's actions need not rise to the level of proximate causation." The Magistrate Judge's Recommendation further acknowledges at slip page 55 that "[a]n allegation that a federal agency coerced another person (*e.g.*, state or local governmental entities or other regulated persons) to take a specific action (or decline to take some action) that harmed the plaintiff in a way that otherwise meets standing requirements is sufficient for Article III standing." For the latter proposition, the Recommendation at slip page 55 cites: (i) *Bennett v. Spear*, 5290 U.S. 154, 169 (1997), in which it is recognized that injury may be produced by the coercive effect upon the action of a third party; (ii) *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1155-1156 (10th Cir. 2013), in which a plaintiff who was not the direct subject of the allegedly unlawful government action or inaction had standing due to the specific injury in fact; (iii) *San Luis & Delta-Mendota Water Auth. v. Salazar*, 618 F.3d 1163, 1169-1170 (9th Cir. 2011), in which the U.S. Fish & Wildlife Service's coercive power to enforce the Endangered Species Act caused the Bureau of Reclamation to reduce water flows, which injured the plaintiff growers

and thus conferred standing on those growers; and (iv) *Mendia v. Garcia*, 768 F.3d 1009, 1012-1013 (9th Cir. 2014), in which the Ninth Circuit observed that what matters is not the length of the chain of causation but the plausibility of the links that comprise the chain.

The Magistrate Judge's Recommendation then at slip page 56 identifies Neal's argument that the Federal Defendants' implementation and enforcement of the 2011 Dear Colleague Letter coerced schools to act in a certain manner and caused Neal's injuries. The Magistrate Judge's Recommendation at slip page 56 incorrectly asserts Neal does not allege that the DOE/OCR's actions in enforcing the 2011 Dear Colleague Letter are final agency actions subject to judicial review under §704 of the APA (Neal does so allege), but correctly asserts that Neal does not allege that his claim applies to agency enforcement actions involving oversight of agency discretion -- thereby distinguishing *National Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930 (D.C. Cir 2004), *rehearing denied*, 383 F.3d 1047 (D.C. Cir. 2004), *cert. denied*, 545 U.S. 1104 (2005).

The Magistrate Judge's Recommendation nevertheless concludes at slip page 56 that "Plaintiff [Neal] does not meet the causation element as to any of his injuries that he claims the 2011 DCL [Dear Colleague Letter] caused in substantial part, and for which he claims he needs injunctive relief against the Federal Defendants." The Magistrate Judge's Recommendation bases this conclusion at slip pages 57 to 58 on a lack of causal connection, denying traceability of the 2011 Dear Colleague Letter to Neal's injury from CSU-Pueblo (a) using the preponderance standard, (b) depriving the respondent of the right to cross-examine and (c) permitting unsuccessful complainants to appeal. The Magistrate Judge's Recommendation at slip pages 57 to 58 states: (i) that Neal's allegations do not support the conclusion that the 2011 Dear Colleague Letter was a substantial cause of CSU-Pueblos use of the preponderance standard; (ii) that even if CSU-Pueblo were freed of the 2011 Dear Colleague Letter and adopted the clear and convincing

standard, this still would only be a generalized grievance true of any male accused of sexual misconduct; (iii) that the 2011 Dear Colleague Letter does not prohibit cross-examination; and (iv) that no injury was alleged from allowing unsuccessful complainants to appeal.

### 2. Three Errors in Denying Causal Connection Between the Injury And The Complained Of Conduct.

The Magistrate Judge's Recommendation, in denying "traceability" from Neal's injury to the 2100 Dear Colleague Letter, misapprehends the Amended Complaint. The Magistrate Judge's Recommendation follows the Federal Defendants' lead and treats the issue of traceability by erroneously confining it to a consideration of three specific aspects of the 2011 Dear Colleague Letter -- standard of proof, disallowance of cross-examination and appeals. Essentially, the Federal Defendants attempt to frame the argument as a matter of the 2011 Dear Colleague Letter advising, and the CSU-Pueblo Defendants not changing, anything in their policies. As a result, Neal's attempt to trace CSU-Pueblo's current policy to the mandates of the 2011 Dear Colleague Letter rests on "speculation about the decisions of independent actors." (Fed. Dfs. Mem. 14). This approach is in error for three reasons.

### a. The Federal Defendants Ignore the Widespread Impact And Mandatory Nature Of The 2011 Dear Colleague Letter.

The first reason that the Magistrate Judge's Recommendation and Federal Defendants are in error is that they miss the forest for the trees by ignoring the widespread impact and mandatory nature of the 2011 Dear Colleague Letter. The DOE/OCR enforces the 2011 Dear Colleague Letter by threatening to rescind federal funds; neither the Federal Defendants nor the entities regulated treat the 2011 Dear Colleague Letter as suggestive or optional. As discussed above in Point I of the Argument (pp. 3-8), the 2011 Dear Colleague Letter mandated that colleges and universities post notices about Title IX and complaint procedures, adopt certain procedures for adjudicating

[11]

sexual misconduct complaints and apply these procedures to all students and complaints, even those as to which the police and public prosecutors were pursuing cases. As noted above, OCR's Defendant Lhamon recognized in her testimony before a Senate Hearing that the 2011 Dear Colleague Letter has "sparked significant changes at colleges and universities as they worked to meet Title IX's requirements consistent with the 2011 [Dear Colleague Letter]." (Amended Complaint ¶ 263.) As also noted above, in July 2014, OCR's Defendant Lhamon warned that she would strip federal funding from any college found to be non-compliant with the requirements of the 2011 Dear Colleague Letter. (Amended Complaint ¶ 268.)

The 1972 enacted and still existing text of Title IX and its original legislative history do not justify at all what is going on today with campus sexual misconduct tribunals because of the 2011 Dear Colleague Letter. The 1972 enacted and still existing text of Title IX, consistent with its original legislative history, simply states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." For four decades, until the 2011 Dear Colleague Letter was issued, student sexual misconduct complaints were not being filed with schools at the rate they are now as a matter of Title IX enforcement, and colleges and universities were not employing school disciplinary procedures to a mass of sexual misconduct complaints. By the 2011 Dear Colleague Letter, colleges and universities, including CSU-Pueblo, were informed that sexual misconduct on campus is a matter of national concern requiring that notices be posted to inform students of Title IX and complaint procedures; and colleges and universities, including CSU-Pueblo, were further informed that federal funding would be lost and monetary fines imposed if they did not conform their actions and procedures with the 2011 Dear Colleague Letter. Colleges and universities effectively do not have the discretion to treat the 2011

Dear Colleague Letter as merely advisory and effectively do not have the discretion to decline to respond to all sexual misconduct complaints and employ procedures other than those dictated by the 2011 Dear Colleague Letter. Were CSU-Pueblo to refer all sexual misconduct complaints to public authorities or adopt a clear and convincing standard or ensure cross-examination rights or restrict appeals to losing parties, CSU-Pueblo could not do so without violating OCR's interpretation of federal law and risking monetary fines and the loss of federal funding.

Here, CSU-Pueblo, like practically every institution of higher education, relies on federal funding. *See* Amended Complaint ¶¶ 259–261. By explicitly linking the continuation of federal funding to implementation of, *inter alia*, the preponderance of the evidence standard, the 2011 Dear Colleague Letter transformed all schools' adoption of that standard into a mandatory obligation. Neal's claim is precisely that; the 2011 Dear Colleague Letter is binding, and as such, it converted any voluntary, unfettered, discretionary policies that could evolve or change when discovered to be biased or unfair, into obligations which could not be altered without risking federal enforcement action. The complaint against Neal was adjudicated after the 2011 Dear Colleague Letter fundamentally altered the legal status of any sexual conduct policies and procedures and rendered certain elements, such as preponderance of the evidence, mandatory.

As discussed above, the Federal Defendants have admitted to the major consequences that the 2011 Dear Colleague Letter has had on colleges and universities around the country and ought not be posturing in this case to the contrary. The notion that the Grant Neal case would have occurred in absence of the 2011 Dear Colleague Letter and attendant OCR activity is nonsense.

      **b.**    **The CSU-Pueblo Student Code of Conduct In Effect At The Time Of Neal's Case Conformed To The 2011 Dear Colleague Letter.**

The second reason that the Magistrate Judge's Recommendation and Federal Defendants are in error is that the 2015-2016 CSU-Pueblo Student Code of Conduct in effect at the time of

Neal's case (Fed. Dfs. Ex. 4C) conformed to the dictates of the 2011 Dear Colleague Letter. The 2015-2016 CSU-Pueblo Code of Student Conduct includes a broad definition of sexual misconduct, "encouraged" students to make of complaints of sexual harassment to (among others) the Title IX coordinator, utilized the preponderance of the evidence standard, expressly denied cross-examination and included provision for appeals by complainant and respondent (allowing for complainant appeals of "not responsible" decisions). (Fed. Dfs. Ex. 4C, pp. 4, 9, 11, 12, 14.)

Contrary to the Magistrate Judge's Recommendation and the Federal Defendants' argument, the conformity of the CSU-Pueblo Student Code of Conduct to the 2011 Dear Colleague Letter supports traceability. It is not speculation to attribute the conformity of the CSU-Pueblo procedures to the 2011 Dear Colleague Letter (Fed. Dfs. Mem. 14) given OCR's Defendant Lhamon's acknowledgement of how colleges and universities have "worked to meet Title IX's requirements consistent with the 2011 [Dear Colleague Letter]" (Amended Complaint ¶ 263) and given how OCR's Defendant Lhamon warned that she would strip federal funding from any college found to be non-compliant with the requirements of the 2011 Dear Colleague Letter (Amended Complaint ¶ 268).

The Magistrate Judge's recommendation cites no case law in this connection, but the Federal Defendants do cite two cases (Fed. Dfs. Mem. 14). Those cases, however, are way off point having no bearing on this case. *Clapper v. Amnesty International*, 586 U.S. __, 133 S.Ct. 1138 (2013), was an action brought by a human rights organization seeking a declaration to hold unconstitutional a provision of the Foreign Intelligence Surveillance Act ("FISA") allowing surveillance of individuals who were not "United States persons" and were reasonably believed to be located outside the United States. The Supreme Court rejected the suit and, on the record in that case, ruled it was speculation whether the Federal Government would seek and the federal

courts would authorize surveillance of certain foreign persons said to be contacts of the plaintiff human rights organization. *Nova Health Services v. Gandy*, 416 F.3d 1149 (10th Cir. 2005), was an action brought by an abortion provider against state officials responsible for overseeing state medical institutions, challenging the constitutionality of a statute making abortion providers responsible for the medical costs of abortions on minors without parental consent. The Tenth Circuit rejected the suit because it was speculative how the particular defendants in the case might have affected the abortion provider's decision to demand parental consent or the abortion provider's alleged loss of minor patients.

        **c.**      **The Inability to Change The CSU-Pueblo**
                  **Code of Conduct Supports Traceability.**

The third reason that the Magistrate Judge's Recommendation and Federal Defendants are in error is that the inability to change the CSU-Pueblo Code of Conduct from what is dictated by the 2011 Dear Colleague Letter supports traceability. The Magistrate Judge's Recommendation and the Federal Defendants point to the 2010-2011 CSU-Pueblo Code of Conduct, which was in effect the school year of the 2011 Dear Colleague Letter's promulgation, as having provisions in conformity with what is stated in the 2011 Dear Colleague Letter concerning the preponderance standard of proof, appeals and disallowance of cross-examination and assert that there can be no traceability to the Federal Defendants with respect to these provisions. (Mag, Judge Recommendation slip pp. 56-57; Fed. Dfs. Mem. 11-12; Fed. Dfs. Ex. 1, pp. 17, 20, 24.) The assertion is a *non sequitur*. Even if the CSU-Pueblo Defendants adopted some procedural elements prior to 2011 that overlap with the 2011 Dear Colleague Letter's requirements, after the 2011 Dear Colleague Letter was issued, no school could deviate from its requirements without reasonable fear of investigation and loss of federal funds, as publicly threatened by representatives of the DOE. CSU-Pueblo could not have adopted a clear and convincing standard or ensured cross-

examination rights or restricted appeals without risking monetary sanctions. The DOE required all regulated schools to use procedures specified in the 2011 Dear Colleague Letter; CSU-Pueblo did use those procedures; and Neal suffered injury by virtue of those procedures. The chain of causation required by Article III is satisfied.

The Magistrate Judge's recommendation cites no case law in this connection, but in the two cases cited by the Federal Defendants on this point (Fed. Drs. Mem. 12), causation was lacking. As discussed above (p. 15), in *Nova Health Services v. Gandy*, 416 F.3d 1149, the Tenth Circuit rejected the abortion provider's suit because the particular defendants in the case did not affect the abortion provider's decision to demand parental consent of minor patients. In *North Laramie Range Alliance v. FERC*, 733 F.3d 1030 (10th Cir. 2013), the Tenth Circuit ruled that the plaintiff advocacy group had failed to show the likelihood that electricity rates of its members had increased due to decisions of the Federal Energy Regulatory Commission ("FERC").

**C.     The Likelihood That The Injury Is Redressed By A Favorable Decision.**

The third *Lujan* factor of redressability is satisfied by Neal: injunctive and declaratory relief aimed at the 2011 Dear Colleague Letter and the attendant unlawful course of conduct by the DOE will likely redress the situation by eliminating the driving force behind the defective proceedings. (Amended Complaint, Prayer for Relief, clause viii.) The Magistrate Judge's Recommendation does not address this *Lujan* factor, and the Federal Defendants' argument (Fed. Dfs. Mem. 15): (i) fails to address the requirement as stated in *Lujan* of a "likelihood," not certainty; (ii) fails to treat this issue in terms of the reality, as alleged in the Amended Complaint and acknowledged by OCR's Defendant Lhamon, that schools are responding to what are the demands of the OCR; and (iii) erroneously assumes that the 2011 Dear Colleague Letter is in accord with Title IX and regulations.

**III.    Neal Has No Adequate Alternative Remedy and § 704 of the Administrative Procedure Act Provides For Judicial Review.**

This action against the Federal Defendants is authorized under the APA's provision for suit where "there is no other adequate remedy in a court." 5 U.S.C. § 704. While the Federal Defendants argue that pursuant to Rule 12(b)(6), Neal's case should be dismissed for failure to state a claim on the ground that he has an adequate alternative to a suit against the Federal Defendants (Fed. Dfs. Mem. 17), the CSU-Pueblo Defendants cannot be sued for the failure to comply with the notice and opportunity to comment provisions of the APA, and the alternative of suing the CSU-Pueblo Defendants in this case is not adequate because it will not get the relief that addresses the illegality of the 2011 Dear Colleague Letter.

Here, the issue is that a school subject to the agency's regulation is effectively coerced by the 2011 Dear Colleague Letter and the DOE's enforcement of it to adopt practices that are unlawful and result in erroneous outcomes. The only way to redress that wrong is a suit against the Federal Defendants. No adequate alternative remedy exists, and the APA plainly allows judicial review of agency actions like the 2011 Dear Colleague Letter. No other remedy could address the procedural injury caused by the agency's failure to comply with the requirements of the APA. Notably, an agency's failure to provide notice of, and opportunity to comment on, proposed regulations can constitute an injury in fact for standing purposes if a plaintiff, in seeking enforcement of notice-and-comment requirements, is "seeking 'to enforce a procedural requirement the disregard of which could impair a separate concrete interest.'" *Yesler Terrace Community Council v. Cisneros,* 37 F.3d 442, 446 (9th Cir. 1994), quoting *Lujan,* 504 U.S. at 572.

The Supreme Court has made it clear that § 704 only precludes APA review of those administrative actions that Congress has "established special statutory procedures" to govern. For example, in *Bowen v. Massachusetts,* 487 U.S. 879 (1988), the Court explained that Congress's

purpose in enacting § 704 was the narrow one of limiting APA review of agency actions already governed by "previously established special statutory procedures relating to specific agencies." 487 U.S. at 903. According to the Court, these "special statutory procedures" include actions reviewable by statutorily created bodies such as the Federal Trade Commission, and National Labor Relations Board. *Id.* The Court warned that "[t]he exception that was intended to avoid such duplication should not be construed to defeat the central purpose of providing a broad spectrum of judicial review of agency action." *Id.*

The Supreme Court affirmed the purpose of § 704's "no other adequate remedy" language in *Darby v. Cisneros*, 509 U.S. 137 (1993). In that case, the Court explained that in *Bowen*, "[w]e concluded that 'although the primary thrust of [§ 704] was to codify the exhaustion requirement,' Congress intended by that provision simply to avoid duplicating previously established special statutory procedures for review of agency actions." *Id.* at 146. Judicial review of a final agency action by an aggrieved person will not be cut off unless there is a persuasive reason to believe that such was the purpose of Congress. *Abbot Laboratories v. Gardner*, 387 U.S. 136, 141 (1967).

The Federal Defendants have not alleged any evidence that Congress intended to restrict access to judicial review of Neal's APA claim. An alternative remedy is only adequate for the purposes of § 704 if it is "duplicative" of the remedy available under the APA. *Roshandel v. Chertoff*, 2008 WL 1969646, at *5 (W.D. Wash. May 5, 2008) (finding APA claim not duplicative of review process enumerated by the statute because "[w]ithout the APA, Plaintiffs cannot obtain a declaration of the unlawfulness of the policy and practice" of the agency).

Rather, the Federal Defendants' contrary argument rests on misreading inapposite case law involving a failure of the agency to issue regulations and/or enforce the law, a failure which it was ruled could be remedied by a suit against the party subject to the agency's regulation for failure to

comply with the law and by an enforcement decree of a court: *Turner v. Secretary of HUD*, 449 F.3d 536 (3d Cir. 2006) (action against the Department of HUD alleging HUD had failed to perform mandatory duties that the Fair Housing Act imposed on HUD with respect to plaintiff lessee's status); *Washington Legal Foundation v. Alexander*, 984 F.2d 483 (D.C. Cir. 1993) (action by white college and law students to compel the DOE to issue regulations under Title VI to prohibit federally funded educational associations from offering scholarships only to minority students); *Gillis v. HHS*, 759 F.2d 565 (6th Cir. 1985) (suit alleging HHS had failed to monitor and enforce the hospitals' obligations under the Hill-Burton Act); *Coker v. Sullivan*, 902 F.2d 84 (D.C. Cir. 1980) (suit to require HHS to monitor and enforce states' compliance with emergency assistance plans of the Aid to Families with Dependent Children program); *Women's Equity Action League v. Cavazos*, 906 F.2d 742 (D.C. Cir. 1990) (action challenging non-enforcement of anti-discrimination statutes by federal agencies, including the DOE); *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930 (action brought by associations representing collegiate men's wrestling coaches challenging DOE enforcement -- not the regulations -- aimed at freeing up independently made school choices regarding men's wrestling programs).

As then Judge Ginsburg explained, the explicit justification of the *Nat'l Wrestling Coaches Ass'n* line of cases is a concern about judicial oversight of agency enforcement discretion:

> We have previously expressed hesitation to position this court as supreme supervisor of federal agency enforcement, a role more effectively performed by the Executive under congressional scrutiny. As we explained in that case [*Council of and for the Blind*, 709 F.2d 1521 (D.C. Cir. 1983)], the APA specifically provides that, if other remedies are adequate, federal courts will not oversee the overseer. *See* 5 U.S.C. § 704.

*Coker v. Sullivan*, 902 F.2d 84, 89 (D.C. Cir. 1990). Similarly, *Women's Equity Action League (WEAL) v. Cavazos*, 906 F.2d 742 (D.C. Cir. 1990), ended twenty years of litigation in which the district court had come to serve "as nationwide overseer or pacer of procedures government

agencies use to enforce civil rights prescriptions." 906 F.2d at 744. The court held that direct suits for discrimination against educational institutions constituted an adequate alternative remedy precluding APA review of the enforcement and oversight work of the DOE.

This case involves none of the underlying concerns in the *National Wrestling Coaches Ass'n* case line. Neal alleges not that he was harmed by the DOE's failure to zealously enforce federal law against discriminating schools, but that he was injured by the DOE's mandate that a directly regulated third party engage in the precise conduct that harmed him. No adequate alternative remedy exists. No other remedy can address the procedural injury caused by the agency's failure to comply with the requirements of the APA.

## CONCLUSION

For the reasons stated above, Neal's Objections to the Magistrate Judge's Recommendation that the Federal Defendants' Federal Rule of Civil Procedure 12(b)(1) motion to dismiss be granted without prejudice for lack of standing should be sustained and the Federal Defendants' motion to dismiss should be denied, and the Court should further grant such further and other relief as is deemed just and proper.

**Dated this 24th day of March 2017**

*/s/ Michael J. Mirabella*
*[ e-filing – March 24, 2017]*
Michael J. Mirabella, Esq.
Michael Mirabella, P.C.
450 E. 17th Ave., Suite 400
Denver, CO 80203
720-931-2094 (ph)
303-592-4385
mmirabella@mbellalaw.com
Counsel for Plaintiff

*/s/ Philip A. Byler*
*/s/ Andrew T. Miltenberg*
*[ e-filing – March 24,2017]*
Philip A. Byler, Esq.
Andrew T. Miltenberg, Esq.
Tara J. Davis, Esq.
363 7th Avenue, Fifth Floor
New York, NY 10001
212-736-4500
amiltenberg@nmllplaw.com
pbyler@nmllplaw.com
tdavis@nmllplaw.com
Counsel for Plaintiff